[No. 18510–1–I. Division One. February 8, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. TODD DANIEL HENDRIX, *Appellant*.

*Dori Jones* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Susan Grey* and *James M. Cline, Deputies,* for respondent.

WEBSTER, J.—Todd Hendrix, a juvenile, appeals his conviction of public indecency, contending that the photos used in a montage presentation were impermissibly suggestive and that the evidence of identity is insufficient to support the conviction. We affirm.

## FACTS

Hendrix was charged by information with three counts of public indecency, contrary to RCW 9A.88.010. After a hearing, his motions to suppress the identification of his picture from a photo montage and to compel a lineup identification procedure were denied.

At trial count 1 was dismissed because it was barred by the statute of limitations. Following trial, Hendrix was acquitted of the charge against him in count 2 based on insufficient evidence of identity. However, the court found Hendrix guilty of the charge in count 3 based on the following testimony.

Sharon Decker, a groundskeeper at Evergreen–Washelli Cemetery, testified that she was sure she had seen the same young man expose himself to her on several occasions. The first incident occurred in August 1984 while she was mowing the grass at the cemetery. Located about 30 to 40 feet away, the young man was naked and masturbating. In September 1984, again while she was mowing the grass, she noticed him in some bushes taking his clothes off. Sometime between September 1984 and spring 1985 she saw him again while she was working at the cemetery. He had his

pants down and was masturbating. He waved and smiled at her.

On April 16, 1985, she observed the young man again for about a 45–minute period. He was naked and watched her while he masturbated. She pretended to ignore him, hoping that a coworker would drive by. When a car passed by their location, the young man dressed; when the car left the area, he undressed and resumed masturbating.

Two days later she was working at the cemetery when she saw him watching her "from real far away." She thought she remembered him taking off his clothes. She again saw him in June 1985, when he was clothed and chased by employees but not caught. Two other times she saw him in and around the cemetery. At these times he was clothed and not acting "suspicious".

In response to reports about the young man by Decker and other cemetery employees, Detective Bakke presented a photo montage to Decker on September 5, 1985. Upon viewing that montage, she picked the photo in position 2, a photo of Hendrix. She testified that she "pointed to it immediately. . . . It just kind of jumped off the page at me. I didn't even actually see the other pictures, I pointed to it so quickly".

At her request, Decker was permitted to view the entire montage a second time about 10 to 15 minutes later. She noticed that, unlike the other photos, the one she had chosen did not have a "very small little, tiny number" in the top left corner. She told the detective about the missing number, and he numbered the photo. She then testified:

> The reason that I brought it up is number one, I personally at that time, when the Detective brought the pictures in, felt uncomfortable that I pinpointed out one picture without looking at all of them. That I just immediately—my attention was drawn to it. And when I noticed that, uh, I seen that the one that I choose isn't numbered, I remember speaking to my boss and to my father about that whole situation, and I felt like there was something different about that picture that wasn't necessarily different in the way of, I think that this is the

flasher. But there was something that drew my attention to it. And I don't remember what the other things were that I felt were different. But I do remember having conversations with my boss at that time. And not feeling real comfortable about identifying that picture.

Detective Bakke could not remember whether one of the photographs was missing a number.

Trial took place on April 4, 1986. Decker was unable to make an in–court identification. When asked whether she recognized anyone in the courtroom, she answered, "I don't know." During trial, defense counsel again unsuccessfully moved to suppress the identification evidence. After finding that Decker had identified Hendrix at the time of the photo montage, the court found him guilty.

## DISCUSSION

 Hendrix argues that the identification evidence should not have been admitted at trial because the photos used for the montage were suggestive. A photographic identification procedure may not be so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Hilliard,* 89 Wn.2d 430, 438, 573 P.2d 22 (1977). The inquiry ends if no suggestiveness is present, and, in such a case, the uncertainty or inconsistency in identification testimony goes only to its weight, not its admissibility. *State v. Vaughn,* 101 Wn.2d 604, 610–11, 682 P.2d 878 (1984).

We conclude that the absence from one photo of what has been described as a "very small little, tiny number" in the upper left corner is not suggestive.[1] In other cases, more apparent differences have been present and the procedure was held not suggestive. *See State v. Weddel,* 29 Wn. App. 461, 474–75, 629 P.2d 912, *review denied,* 96

---

[1]Instead of the original color photo montage, a black and white photocopy of the original was introduced at trial. Appellant's brief indicates that both the original and the copy have been lost by the King County Juvenile Court.

Wn.2d 1009 (1981) (defendant's photo was one–fourth inch wider than other five photos and the six photos contained three different backgrounds with only defendant pictured against an off–white wall); *State v. Smith,* 9 Wn. App. 279, 281–82, 511 P.2d 1032, *review denied,* 82 Wn.2d 1013 (1973) (out of 11 photos shown, 3 were substantially larger than the others and 2 of those 3 pictured defendant). *See also* cases cited in *Weddel,* at 476 n.10. Therefore, any inconsistency in the identification testimony goes only to its weight, not its admissibility. *Vaughn,* at 610–11.

 Hendrix next challenges the sufficiency of the evidence on identity. The standard of review in a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). All reasonable inferences from the evidence are to be drawn in the State's favor and interpreted most strongly against the defendant. *State v. Partin,* 88 Wn.2d 899, 906–07, 567 P.2d 1136 (1977).

A pretrial identification of the accused is admissible as substantive evidence of identity despite the witness's inability to make an in–court identification. *State v. Simmons,* 63 Wn.2d 17, 19, 385 P.2d 389 (1963). Although our courts have not addressed the issue, on a few occasions, courts from other jurisdictions have been called upon to determine whether the extrajudicial identification, standing alone, was sufficient to support a conviction and, generally, have answered the question in the affirmative. *See Cousins v. State,* 18 Md. App. 552, 308 A.2d 692 (1973); *Bedford v. State,* 293 Md. 172, 443 A.2d 78 (1982); *Commonwealth v. Fitzgerald,* 376 Mass. 402, 381 N.E.2d 123 (1978); *Commonwealth v. Vitello,* 376 Mass. 426, 381 N.E.2d 582 (1978). *Contra, Gibbs v. State,* 7 Md. App. 35, 253 A.2d 446 (1969). *See* Annot., *Admissibility and Weight of Extrajudicial or Pretrial Identification Where Witness Was*

*Unable or Failed To Make In–Court Identification,* 29 A.L.R.4th 104, 109, 131–32 (1984). However, in those cases holding that the evidence was sufficient to support the conviction, the witnesses, unlike Decker, did not express reservations regarding their prior identification when describing it at trial.

In *Gibbs,* where the evidence was held insufficient, the witness had identified the defendant from both a photo montage and a lineup. *Gibbs,* 253 A.2d at 447. At trial, however, the witness stated that while he thought defendant was the robber when he had identified him earlier, he no longer believed that was the case. *Gibbs,* 253 A.2d at 448. The court held that the net effect of the witness's testimony was that he had been mistaken in his earlier extrajudicial identification of the defendant. Thus, any value the earlier identification may have had was completely dissipated and insufficient upon which to base a finding of guilt beyond a reasonable doubt. *Gibbs,* 253 A.2d at 449.

The facts of the present case are similar to *Gibbs* in that both involve positive extrajudicial identifications. The critical difference between the cases lies in the nature of the in–court testimony concerning the prior identification. In *Gibbs* the witness testified that the defendant was not the robber and that his earlier identifications were mistaken. In the present case Decker did not testify that her earlier identification of Hendrix was mistaken. She merely said that she "felt uncomfortable that [she had] pinpointed out one picture without looking at all of them" and that she thought that the absence of a number on Hendrix's photo was the reason. Unlike the witness in *Gibbs,* she did not completely dissipate the value of her earlier identification.

While recognizing that questions of identification are for the trier of fact, *State v. Johnson,* 12 Wn. App. 40, 44, 527 P.2d 1324 (1974), *review denied,* 85 Wn.2d 1001 (1975), Hendrix places his reliance upon cases in which the court reversed the defendant's conviction because the sole identifying witness had been unsure and no corroborating facts or circumstances linked defendant to the crime. *United States*

*v. Musquiz,* 445 F.2d 963, 965 (5th Cir. 1971); *United States v. Johnson,* 427 F.2d 957, 961 (5th Cir. 1970).

We agree with the rule followed in those cases but find those cases are factually dissimilar from the present case. In *Johnson* the sole witness was unable to positively identify the defendant as the robber in either a photo montage, a lineup, or in court. *Johnson,* at 958. Thus, all the identification testimony in *Johnson* was "unsure". In this case, however, the evidence was both positive and negative. *Musquiz* is likewise not helpful. First, unlike the present case, *Musquiz* did not involve a pretrial identification; the only opportunity that the witnesses had to identify the defendant was in court. Second, like the testimony in *Johnson,* all the identification testimony in *Musquiz* was unsure. One witness could not positively identify the defendant and the other gave only equivocal testimony. *Musquiz,* at 965–66.

During oral argument, defense counsel maintained that Decker's pretrial identification was equivocal. In support of this contention, we were directed to a statement made by Decker during cross examination. At that time, she was asked about her earlier statement to the effect that the person in the picture was a little different than the person she had seen in the cemetery. She answered, "Right. . . . [L]ooking at [the picture] harder, I did say that I don't think that it looks just like him at all."

We have carefully reviewed the record, however, and conclude that this statement was not made to the detective at the montage presentation and that her identification was not equivocal at the time she made it. The reasonable inferences to be drawn from Decker's testimony that she "immediately" picked the picture because it "jumped off" the page is that she had made a strong accurate identification of the young man she had seen in the cemetery. Any second thoughts about the pretrial identification did not take place until sometime after it occurred and, most likely, reflect that she understood the serious implications of her choice.

We, therefore, affirm the trial court decision.

WILLIAMS and GROSSE, JJ., concur.

Reconsideration denied March 4, 1988.

Review denied by Supreme Court May 31, 1988.