[No. 10674-8-III. Division Three. January 23, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS
EDWARD MAUPIN, *Appellant*.

*Maryann C. Moreno,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Patricia Ann Thompson* and *Kevin M. Korsmo, Deputies,* for respondent.

MUNSON, J. — Thomas E. Maupin was convicted by a jury of first degree felony murder and sentenced to an

exceptional term of 480 months. The underlying felonies charged were second degree kidnapping, first degree rape or attempted rape.

Mr. Maupin appeals, contending (1) evidence was insufficient to support a felony murder conviction predicated on rape or attempted rape; (2) his motion for change of venue should have been granted; (3) identification testimony based upon a detective's use of a single photograph shown to a witness should have been excluded; and (4) the exceptional sentence was unjustified. We reverse and remand, finding the first issue dispositive. Issues two and three are addressed because they may be raised on remand; issue four is not addressed because it is moot in light of the reversal.

On January 25, 1988, the Spokane Police Department received a call that Tricna Dawn Cloy, the 6-year-old daughter of Christine Fraijo, had disappeared during the night from the family home at 319 South Ralph in Spokane. The previous evening, Ms. Fraijo, accompanied by Tricna and her 4-year-old son Elston, attended a birthday party at the home of a neighbor. Mr. Maupin was also a guest at the party. He conversed with Ms. Fraijo, commenting that her children were pretty and needed a father. At approximately 11 p.m., Mr. Maupin walked the Fraijo family back to their home, accompanied Elston to his room upstairs and put him to bed while Ms. Fraijo put Tricna to bed on the main floor. When Ms. Fraijo refused to allow Mr. Maupin to spend the night, he returned to the party for a short time then left for his apartment at the Western Motel with the motel manager, Richard French.

After Mr. Maupin's departure, Ms. Fraijo locked her door and went to bed. She was disturbed three times during the night, but failed to arouse sufficiently to notice anything was wrong. In the morning, she noticed her door had been forced open, a picture had fallen off the wall and broken, telephone cords were disconnected and her daughter was missing. Police were called.

After an initial investigation at the Fraijo residence, the police went to the Western Motel to contact Mr. Maupin as

well as several other guests who had attended the party. The police questioned Mr. Maupin, who resided there with his sister and invalid mother, and a cursory search of his apartment was made. They found no evidence.

During the evening of January 26, 1988, while police watched the motel, Mr. Maupin went to the manager's apartment to inquire about a back door exit. After being told there was none, Mr. Maupin attempted to evade police by using the front door and running through the parking lot. He was apprehended, taken to the police station for questioning, was photographed and released. He returned to the Western Motel. The photographs were later shown to a witness who identified Mr. Maupin as having been present in the neighborhood twice during the night of the abduction.

Later that night, Mr. Maupin persuaded Mr. French, the motel manager, to drive him to Idaho, ostensibly to secure employment. The possible job never materialized. Mr. French returned to Spokane just before daylight, leaving Mr. Maupin in Coeur d'Alene.

The police searched Mr. Maupin's apartment on January 28, and found a note which stated:

> I met me a good little woman. She's down right pretty. I call her Mud Flap[1] for short. Her momma has brain damage, she says she gets cold chills before I even get to the house. What the hell. I got a spare Mudflap if she braks [sic] off.

On February 25, Spokane police served Mr. Maupin, who was then incarcerated in the county jail in Birmingham, Alabama, with an arrest warrant for indecent liberties based on an unrelated incident in Spokane County. When questioned about Tricna Cloy, he stated, "You are talking about my life here". Mr. Maupin stood trial in Spokane on the indecent liberties charge and was acquitted. After his acquittal, he again left the area.

Tricna Cloy's body was found in a gravel pit near her home on June 9, 1988. The police recovered the child's skull,

---

[1] We are advised "Mud Flap" is a common term used in the South for black people.

lower jaw, several small bones, and clumps of hair including one with a purple clip. A forensic odontologist identified the remains. The burial site was located 333 feet from the location of the skull. The police also located a faded blue nightgown which covered part of the rib cage and an orange snowsuit which was covered with branches. The branches were piled 6 feet high and appeared to have been broken sometime prior to their discovery. The snowsuit was open and showed marked soiling from body deterioration in the upper portion. No bones of the lower extremities were found in the snowsuit. Another piece of the nightgown and other bones were found scattered in the area. Although evidence indicated the child routinely wore underwear to bed, none was found. Investigating officers also found two camps at the gravel pit. Cans and cigarette butts were checked for fingerprints but none were found.

The remains were submitted to a forensic pathologist who testified the cause of death was homicide.[2] However, he was unable to determine the modality, the place, or the time

---

[2]"From that assemblage I was unable to determine a specific type of trauma which had occurred to this child. There were — these bones were x-rayed and the materials that came with them were x-rayed and there were no fragments of knife or fragments of bullet and none of the bones — well, some of the bones were fractured. The area they were broken had chews and gnawed in appearance and they were in areas that I expect of animal preditation [sic]. Some bones by looking at them I could tell that animals had basically gnawed at the bones and I therefore supposed by the areas which are missing from this particular individual that most of the disturbance of the bones we see was, in fact, due to animal preditation [sic] . . ..

". . . .

". . . there was a prominent tear in the right waist to thigh area of the garment [blue nightgown]. . . .

". . . .

"This will sound circumscript [sic] but I believe this child, and with reasonable medical certainty, died of what I called homicidal violence. And this is based . . . on my examination of the bones and the materials. But I also attended the scene and this child's remains were partially recovered from a scattered area but also partially recovered from a . . . grave area, covered or concealed by foliage and branches . . .. The single most striking thing that drives me to the conclusion when we're dealing with homicidal violence was the fact there was an attempt to conceal the remains. It is not possible for a party who is expired to attempt to conceal themselves."

of death. A forensic scientist was unable to detect the presence of semen nor did he find any foreign human hairs or fibers. In February 1989, Mr. Maupin waived extradition from Ohio in order to stand trial in Spokane County on the charge of felony murder predicated on the underlying crimes of kidnapping and/or rape.

The dispositive issue is whether there was sufficient evidence of first degree rape or attempted rape to support the felony murder conviction on that basis. Evidence is sufficient to support a conviction only if, when viewed in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). A felony murder conviction must be supported by sufficient evidence of each element of the predicate felony. *Green*, at 224; *State v. Quillin*, 49 Wn. App. 155, 164, 741 P.2d 589 (1987) (citing *State v. Gamboa*, 38 Wn. App. 409, 412, 415, 685 P.2d 643 (1984)), *review denied*, 109 Wn.2d 1027 (1988).

The jury was instructed that to convict Mr. Maupin of the first degree murder, it must unanimously find him guilty of murder committed in the course of, in furtherance of, or in flight from the commission or attempted commission of kidnapping or rape.[3] The jury was also instructed on the

---

[3]The to convict instruction reads as follows:

"To convict the defendant of the crime of Murder in the First Degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

"1. That on or about the 25th day of January 1988, Tricna Dawn Cloy was killed;

"2. That the defendant was committing or attempting to commit Second Degree Kidnapping or First Degree Rape;

"3. That the defendant caused the death of Tricna Dawn Cloy in the course of and in the furtherance of such crime or in immediate flight from such crime;

"4. That Tricna Dawn Cloy was not a participant in the crime; and

"5. That the acts which caused the death of Tricna Dawn Cloy occurred in Spokane County, Washington.

"If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, it will be your duty to return a verdict of guilty.

"On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty."

elements of first degree rape based on RCW 9A.44.040.[4] No instruction defining the term "sexual intercourse" was given.[5]

There is no evidence in the record of sexual intercourse. Rather, the record discloses only that Mr. Maupin displayed a sexual interest in Ms. Fraijo. As to the child, Mr. Maupin merely commented the child was "pretty" and "needed a father". The other evidence, panties missing from the body when it was found, a tear in the child's nightgown, the fact the lower half of the child's body was not covered by the snowsuit, and the content of the "Mudflap" note, at most suggests the possibility of some unspecified sex offense. The experts were unable to confirm sexual intercourse had occurred because of the condition of the body. Absent evidence of sexual intercourse, as that term is defined by statute, or a substantial step toward an overt act of sexual

We note the information charged Mr. Maupin in the conjunctive: "while committing and attempting to commit . . ."; but the jury was instructed in the disjunctive: "was committing or attempting to commit . . .". No error has been assigned to the jury instructions on the basis of this distinction.

[4]RCW 9A.44.040(1) provides:

"A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator or an accessory:

". . . .

"(b) Kidnaps the victim; or

". . . .

"(d) Feloniously enters into the building or vehicle where the victim is situated."

[5]"As used in this chapter:

"(1) 'Sexual intercourse' (a) has its ordinary meaning and occurs upon any penetration, however slight, and

"(b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, . . ., and

"(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex." RCW 9A.44.010.

intercourse, rape or attempted rape has not been proven.[6] The court erred in instructing the jury on the issue of rape.

If one of the alternative methods upon which a charge is based fails, the verdict must be set aside unless the court can ascertain that it was based on remaining grounds for which sufficient evidence was presented.[7] *Green*, at 230; *State v. Gillespie*, 41 Wn. App. 640, 645, 705 P.2d 808 (1985), *review denied*, 106 Wn.2d 1006 (1986). Here, the trial court declined to provide the jury with a special verdict form which would have shown which of the underlying felonies the jury relied upon in reaching its verdict. There is no way for this court to know whether the jury based its verdict on a unanimous determination Mr. Maupin committed second degree kidnapping.

The State contends the evidence is overwhelming the child was kidnapped prior to the rape; therefore, any juror who convicted Mr. Maupin of felony murder predicated on rape, or attempted rape, must have, by necessity, also found him guilty of felony murder based upon second degree kidnapping. Although there is sufficient evidence in the record to support a verdict based on kidnapping as the predicate felony, whether the kidnapping element was proved beyond a reasonable doubt is a jury question which cannot be resolved by this court. *See Green*, at 234. The harmless error analysis, relied upon by the dissent, is inapplicable. Thus, in view of the insufficiency of the evidence to support

---

[6]For a discussion of sufficient evidence to establish attempted rape, see *State v. Jackson*, 62 Wn. App. 53, 813 P.2d 156 (1991).

[7]The State relies on *Schad v. Arizona*, ___ U.S. ___, 115 L. Ed. 2d 555, 111 S. Ct. 2491, 2495 (1991) which considered whether the jury was required to be unanimous on whether the defendant committed premeditated murder or felony murder predicated on robbery. However, whether there was insufficient evidence to establish one of the alternative means was not raised or discussed by the Court.

*Griffin v. United States*, ___ U.S. ___, 116 L. Ed. 2d 371, 112 S. Ct. 466 (1991), cited in the dissent, would require a different analysis in a federal prosecution. This court, however, is bound by *Green* in its broader interpretation of due process requirements in our state courts. *See State v. Bartholomew*, 101 Wn.2d 631, 639-40, 683 P.2d 1079 (1984).

a conviction predicated on the rape charge, we remand for a new trial on the charge of first degree felony murder based on kidnapping.

Having determined the conviction must be reversed, we address two issues which may be raised on remand.

First, Mr. Maupin contends the court erred in denying his motion for change of venue. The decision to grant or deny a motion for change of venue is within the discretion of the court. *State v. Rupe*, 108 Wn.2d 734, 750, 743 P.2d 210 (1987), *cert. denied*, 486 U.S. 1061 (1988) (*Rupe* II). The motion should be granted when necessary to insure the defendant's due process guaranty of a fair and impartial trial. The defendant need show only a probability of unfairness or prejudice. *Rupe* II, at 750. Certain factors should be considered to determine whether the court has abused its discretion:

> (1) the inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn.

*State v. Crudup*, 11 Wn. App. 583, 587, 524 P.2d 479, *review denied*, 84 Wn.2d 1012 (1974). Widespread publicity of a factual, noninflammatory nature will not justify a change of venue. *State v. Rupe*, 101 Wn.2d 664, 675, 683 P.2d 571 (1984) (*Rupe* I).

This court has reviewed the publicity and determined it was of a factual, noninflammatory nature. The articles described the crime, the investigation, the victim, and the support offered to the victim's family by the community. Out of the numerous articles, there were few prejudicial statements. The jury was picked from a large community

approximately 2 years after the event. The court allowed a lengthy and exhaustive individual voir dire of potential jurors. Though most of the jurors had some knowledge of the event, they indicated they would be able to separate their knowledge from facts proven at trial. The jury of 14 was selected from the initial panel of 24. Mr. Maupin used only three peremptory challenges and thus, presumably, had no objection to the impartiality of the jury. *See Rupe* I, at 675. Balancing these factors, it does not appear the trial court abused its discretion in denying the motion for a change of venue. There was no error.

Second, Mr. Maupin contends the identification made by witness Todd Grendahl should be suppressed because his identification was based upon a single photograph shown to him by police. Mr. Grendahl, a neighbor of Ms. Fraijo, testified he observed a man sitting on the Fraijo porch during the middle of the night the child disappeared. He described him as 5 foot 8 inches, 160 pounds, and wearing a green jumpsuit. Mr. Grendahl saw him again at 3 a.m. when he returned to his home. The man passed him on the street; Mr. Grendahl attempted to speak to him, but the man said nothing and continued down the street. Two days later, the police showed him only Mr. Maupin's photograph and Mr. Grendahl identified him as the man he had observed. Mr. Grendahl admitted during cross examination he was initially confused as to the man's race, whether black or white. Mrs. French testified Mr. Maupin possessed a green jumpsuit.

The presentation of a single photograph is, as a matter of law, impermissibly suggestive. *Manson v. Brathwaite*, 432 U.S. 98, 116, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977); *State v. Hendrix*, 50 Wn. App. 510, 513, 749 P.2d 210 (citing *Simmons v. United States*, 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968)), *review denied*, 110 Wn.2d 1029 (1988). However, impermissible suggestiveness may not constitute a violation of due process. *State v. McDonald*,

40 Wn. App. 743, 746, 700 P.2d 327 (1985). Rather, this court must review the totality of the circumstances to determine whether that suggestiveness created a substantial likelihood of irreparable misidentification. *State v. Taylor*, 50 Wn. App. 481, 485, 749 P.2d 181 (1988) (citing *State v. Traweek*, 43 Wn. App. 99, 103, 715 P.2d 1148, *review denied*, 106 Wn.2d 1007 (1986)); *McDonald*, at 746. To determine reliability, the factors set out in *Manson v. Brathwaite*, 432 U.S. at 114, must be considered:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

*See also Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972).

Here, Mr. Grendahl observed Mr. Maupin on two different occasions the night the child disappeared. During the second opportunity, Mr. Maupin passed directly by him and Mr. Grendahl attempted to speak with him. He gave an accurate description to the police prior to being shown the photograph, including height, weight, color and type of hair and manner of dress. He was uncertain of the man's race. He was certain of his identification when he viewed the photograph only 2 days after his confrontation with Mr. Maupin. He also unhesitatingly identified Mr. Maupin in court and was available for cross examination on his identification. Finally, Mr. Maupin's unusual manner of dress was confirmed by another witness. Thus, these circumstances are distinguishable from the facts of *McDonald* which dealt with an impermissibly suggestive and unreliable identification. There was no error.

The judgment is reversed and the cause remanded for retrial.

THOMPSON, A.C.J., concurs.

GREEN, J.* (dissenting) — I agree with the majority that the State presented no evidence of a rape or attempted rape and therefore the court erred by instructing the jury on that issue. However, in my view, this error does not automatically require a reversal or a new trial. The jury was instructed that it must first unanimously agree as to either or both alternatives — kidnapping or rape — and then unanimously agree Mr. Maupin committed the murder. (Instruction 11.) Here, the evidence of kidnapping is uncontroverted and overwhelming; there is no evidence of rape. In this situation, the error was harmless. Thus, I respectfully disagree with my brethren that a reversal is required by *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980) (*Green* II), and thus record my dissent.

In *State v. Green*, 91 Wn.2d 431, 588 P.2d 1370 (1979) (*Green* I), the defendant was convicted of aggravated first degree murder of an 8½-year-old girl in the course of committing a rape or kidnapping. On appeal, the defendant argued there was insufficient evidence to support a jury conviction based on the alternative predicate crime of kidnapping. This contention was rejected and the murder conviction was affirmed. The court later granted Mr. Green's motion for reconsideration in light of *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979) and reversed the conviction. *Green* II. The court held there was insufficient evidence to support a finding of kidnapping and a new trial was required. The jury had not been instructed to return separate unanimous verdicts as to the alternate predicate crimes — kidnapping and rape. It only reached a general guilty verdict of first degree murder. In this situation, the court in *Green* II observed that six jurors could have found rape and six could have found kidnapping. The two *Green* decisions indicate the question of whether a kidnapping occurred was a close one.

---

*Judge Dale M. Green was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

That is not the situation here. Unlike *Green* II, the jury was instructed it must unanimously find Mr. Maupin committed a kidnapping or unanimously find he committed a rape, or unanimously find both, and then unanimously find he committed the murder. In light of these instructions, which we must presume the jury followed, *State v. Grisby*, 97 Wn.2d 493, 499, 647 P.2d 6 (1982), *cert. denied*, 459 U.S. 1211 (1983), it would be impossible to reach the speculated jury result of six votes for kidnapping and six votes for rape, as the court noted in *Green* II, at 233, or any other division of votes. Thus, it is self-evident that in the face of overwhelming, uncontroverted evidence of kidnapping and no evidence of rape that a reasonable and rational jury following the court's instructions could only unanimously conclude the murder occurred in the course of a kidnapping. Consequently, as I see it, the court's error in instructing on the issue of rape was harmless beyond a reasonable doubt.

Further, the United States Supreme Court recently reached a similar conclusion in a factually analogous situation in *Griffin v. United States*, ___ U.S. ___, 116 L. Ed. 2d 371, 112 S. Ct. 466 (1991). There, the defendant was charged in United States District Court with conspiring to defraud the United States by (1) impairing the efforts of the Internal Revenue Service (IRS) to ascertain income taxes, and (2) impairing the efforts of the Drug Enforcement Administration (DEA) to ascertain forfeitable assets. When the evidence at trial failed to connect the defendant to the DEA, she moved to sever the charge. This was denied and the jury returned a general verdict of guilty. The Supreme Court held that even though there was no evidence of impairing the efforts of the DEA, there was sufficient evidence of impairing the efforts of the IRS. The court affirmed the conviction observing that if the evidence is insufficient to support an alternative legal theory, it is preferable to give an instruction removing the theory from jury consideration. "The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction." *Griffin*, 112 S. Ct. at 474.

Under the unique facts presented in the instant case and for the reasons stated, I would affirm the conviction.

Review denied at 119 Wn.2d 1003 (1992).