90 P.3d 79 (2004)
121 Wash.App. 642
STATE of Washington, Respondent,
v.
Michael Kevin RATLIFF, Appellant.
No. 29428-1-II.
Court of Appeals of Washington, Division 2.
May 18, 2004.
*80 Lisa Elizabeth Tabbut, Attorney at Law, Longview, WA, for Appellant.
Richard Alan Melnick, Attorney at Law, Vancouver, WA, for Respondent.
ARMSTRONG, J.
A jury convicted Michael Kevin Ratliff of first degree robbery. Before the trial, Ratliff participated in a line up, and two witnesses identified him as the perpetrator. During jury deliberations, the trial judge answered several jury questions without notifying the parties, and two of the answers provided the jury with facts not in evidence. Because we cannot say beyond a reasonable doubt that the errors were harmless, we reverse and remand for a new trial.

*81 FACTS
On July 13, 2000, a man robbed a Little Caesar's pizza store in Clark County, Washington. During the robbery, which lasted 5-10 minutes, the robber was close to the three employees present. He carried a long-barreled handgun, wore a dark sweatshirt with the hood up, dark jeans, dark sunglasses, and had a mustache and "bright blue eyes." Report of Proceedings (RP) at 84. The robber took $750. Heidi Ammons, the store manager, testified that at first she thought the robber was the store's owner "just playing around." RP at 63-64. Ammons also testified that the robber wore "[r]eally dark sunglasses." RP at 65.
Ratliff was later arrested by an officer from the Hillsboro, Oregon Police Department. The officer found a handgun similar to the one used in the robbery on the floorboard of the car that Ratliff was driving.
After he was arrested, 12 days after the robbery, Ratliff participated in a six-man line up at the Washington County jail. The participants stood in an enclosed, lighted room separated from the witnesses by a one-way window. The witnesses were no more than ten feet from the participants. The officers who conducted the line up did not tell the witnesses that one participant was a robbery suspect, and they said nothing to suggest choosing Ratliff.
All the participants were white males with mustaches. Participant number four, however, did not have a "bushy" mustache as the witnesses had described. RP at 39. The participants wore prison uniforms, but Ratliff's was the only orange uniform. The others wore pink or blue uniforms. Finally, Ratliff was the only participant with a black eye. The witnesses identified Ratliff.
The State charged Ratliff with first degree robbery. A jury convicted him on that charge after hearing testimony from the three employee witnesses (two of whom identified Ratliff in court), the officer who conducted the line up, and Ratliff's girlfriend who presented an alibi defense. The conviction was Ratliff's third for a "most serious offense;" accordingly, the trial judge imposed a life sentence. Clerk's Papers (CP) at 104.

ANALYSIS
Ratliff first claims that the trial court committed reversible error in responding to several jury questions during deliberations. He raises two issues: (1) whether the court's response was an ex parte communication in violation of former CrR 6.15(f)(1) (2002);[1] and (2) whether the court's response was an improper comment on the evidence in violation of article 4, section 16 of the Washington State Constitution.
The State concedes that the trial court erred by not notifying the parties of the jury's questions. And because a defendant has a constitutional right to be present at all stages of the proceeding, the error was constitutional. In re Pers. Restraint of Lord, 123 Wash.2d 296, 306, 868 P.2d 835, clarified, 123 Wash.2d 737, 870 P.2d 964 (1994); State v. Rice, 110 Wash.2d 577, 613, 757 P.2d 889 (1988); see also State v. Russell, 25 Wash. App. 933, 947-48, 611 P.2d 1320 (1980) (The trial court is to "communicate with a deliberating jury only with all counsel ... present.").
The Washington State Constitution, article IV, section 16, provides, "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." A judge impermissibly comments on evidence when he conveys a personal attitude toward the merits of the case. State v. Hughes, 106 Wash.2d 176, 193, 721 P.2d 902 (1986). "[T]he jury must be able to infer from what the [judge] said or did not say *82 that he personally believed or disbelieved the testimony in question." State v. Browder, 61 Wash.2d 300, 302, 378 P.2d 295 (1963) (citing State v. Reed, 56 Wash.2d 668, 354 P.2d 935 (1960)).
We accept the State's concession of error, but we also conclude that the trial court's response violated article IV, section 16. Because both errors are of constitutional magnitude, we must reverse unless the State convinces us beyond a reasonable doubt that Ratliff's trial outcome would have been the same absent the errors. State v. Guloy, 104 Wash.2d 412, 425, 705 P.2d 1182 (1985).
The jury's questions and the trial judge's answers were as follows:
[1] Q: What circumstance led to the search of his vehicle and seizure of the weapon?
A: No evidence introduced on that issue.
[2] Q: Was the gun found in the truck or the girl[']s car(April Williams)[?]
A: Stipulationhis vehicle.
[3] Q: Can we see the ticket that was issued on the 14th[?] The ticket in which he gave a false name.
A: Not introduced as evidence.
[4] Q: When was he arrested?
A: Prior to the lineup.
[5] Q: Where was he arrested[?]
A: Washington County.
CP 90-91.
The trial judge's answers to numbers 1 and 3 arguably did not convey the judge's personal attitude on an issue. The trial judge's answer to number 2 did allow the jury to infer information not in evidence. The parties had stipulated that the police found the gun in "the driver's side floorboard from the automobile being driven by the Defendant." RP at 100. But the trial judge's answer went further and told the jury the gun was found in "his vehicle." RP at 90. The jury could infer from this answer that the trial judge knew Ratliff owned the vehicle. And this went beyond the parties' stipulation.
More serious are the trial judge's answers to questions 4 and 5. Neither party introduced evidence that Ratliff was in custody before the lineup. Nor was there any evidence that Ratliff was arrested in Washington County, Oregon. These answers violated article IV, section 16, which commands that "[j]udges shall not charge juries with respect to matters of fact." According to Ratliff, the prejudicial effect of the trial judge's answers was that they "left the jury to draw negative conclusions about Mr. Ratliff's arrest in Washington County and his participation in the line up." App. Br. at 9. We agree.
The trial judge's answer to question 4, that Ratliff was arrested "prior to the lineup," told the jury that Ratliff was a suspect before the witnesses identified him in the lineup. The jury could easily infer that the police knew or had good reason to believe Ratliff was the robber before the lineup. And the trial judge's answer to question 5 told the jury that Ratliff was arrested out of state, a fact from which the jury could easily have inferred that Ratliff had fled to avoid capture. We next consider whether these constitutional errors were harmless beyond a reasonable doubt.
The only issue at trial was identity. The State argued that Ratliff was the perpetrator; Ratliff put on evidence of an alibi, i.e., that he had been on an all-day outing with his girlfriend and her daughter. The State's evidence consisted mainly of the employees' identifications.
One employee, Heidi Ammons, positively identified Ratliff at the line up and then again at trial. She based her in-court identification on her recollection of the line up and her recollection of the crime.[2] Another employee, Kerry Walker, also identified Ratliff at the line up and at trial, but she was equivocal about her in-court identification. The record is unclear as to whether she based her trial recollection on the line up or the crime, but the line up identification hinged on Ratliff's bright blue eyes. Walker testified that she was 97 percent positive about the line up identification. The third employee, Linda Desper, identified a different *83 line up participant, although she made her selection because she "had a choice between two people, so I picked the one I thought looked like the right height and mustache." RP at 127. This evidence does not convince us that the trial court's errors were harmless beyond a reasonable doubt. Accordingly, we reverse.
Ratliff also challenges the line up as being impermissibly suggestive. Because the issue may arise on retrial, we address it.
Ratliff bears the burden of proving that the line up was impermissibly suggestive. See State v. Gould, 58 Wash.App. 175, 185, 791 P.2d 569 (1990) (citing State v. Guzman-Cuellar, 47 Wash.App. 326, 335, 734 P.2d 966 (1987)). If he proves impermissible suggestiveness, he must then establish that, the "suggestiveness created a substantial likelihood of irreparable misidentification." State v. Maupin, 63 Wash.App. 887, 897, 822 P.2d 355 (1992). Important factors are (1) the witness's opportunity to view the perpetrator during the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the degree of certainty demonstrated at the line up, and (5) the time between the crime and the line up. Maupin, 63 Wash.App. at 897, 822 P.2d 355.
Ratliff argues that several aspects of the line up rendered it impermissibly suggestive: "(1)[his] mid line up at position 3; (2) he was the only line up participant wearing bright orange jail clothing; and (3)[he] was the only line up participant with a black eye." App. Br. at 15.
Ratliff fails to explain how his mid line up positioning suggests that he was the perpetrator. And we can think of none.
Ratliff's orange jail uniform and black eye were, however, characteristics that distinguished him from other members of the group. But all the line up participants wore colored jail uniforms; two of the others wore dark blue and three wore orange or pink. We find nothing in Ratliff's orange colored suit to suggest that he was the robber.
And no witness described the robber with a black eye. Thus, Ratliff's black eye does not point to him as the robber.
Ratliff draws an analogy between his line up and the suggestive identification procedures in State v. Traweek, 43 Wash.App. 99, 715 P.2d 1148 (1986), overruled on other grounds by State v. Blair, 117 Wash.2d 479, 816 P.2d 718 (1991), and State v. Maupin, 63 Wash.App. 887, 822 P.2d 355 (1992). In Traweek, witnesses described the perpetrator as a blonde male, and the defendant was the only blonde in the line up; in Maupin, a photo montage with just one photo was the basis for the witness's identification. Thus, Traweek and Maupin are dissimilar.
Finally, no witness at the line up was apparently influenced by the color of Ratliff's suit, his black eye, or his position. Ammons based her choice on his "build," his "hair color," and his "facial structure." RP at 70. And Kerri Walker was influenced by Ratliff's bright blue eyes. We conclude that the line up was not impermissibly suggestive.
Reversed and remanded.
I concur: HOUGHTON, P.J.
BRIDGEWATER, J. (concurring in part/dissenting in part).
I concur with the majority that the line up was not impermissibly suggestive. But I respectfully disagree that the errors by the trial court require reversal.
I accept the State's concession that the trial court erred by not notifying the parties of the jury's questions, and agree that the error of communicating with the jury in violation of CrR 6.15(f)(1) was of constitutional dimensions. And I agree with the standard set forth by the majority with the content of the trial court's answers, i.e., that those answers should be measured by a violation of the Washington State Constitution, article IV, section 16. But, I view the trial court's errors as being harmless beyond a reasonable doubt; thus, reversal is not required.
I analyze the answers differently from the majority.
Under other circumstances, the judge's answer to question 1 might have conveyed a personal attitude on an evidentiary issue. For example, had the question been whether Ratliff had an alibi and the judge responded "[n]o evidence on that issue," the response *84 would have suggested that the judge disbelieved Ratliff's evidence that he was with his girlfriend at the time of the robbery. Clerk's Papers (CP) at 90; Majority at 4. But we are not faced with that scenario. Instead, question 1 merely asked about an evidentiary issue for which there truly was no evidence introduced, a point that Ratliff acknowledges. The judge's answer did not convey a personal opinion on any trial evidence.
The judge's answer to question 2 also was not an impermissible comment. Although Ratliff correctly notes that evidence did not establish vehicle ownership, that issue was not relevant to the case. That the answer implies Ratliff's ownership is therefore inconsequential. The important point was that the gun was found in a car linked to Ratliff. This was a stipulated fact that the judge's answer merely confirmed. Had ownership been a contentious point, the answer may have expressed a personal opinion. As it was not, the answer was not an improper comment.
As to the judge's answer to question 3, Ratliff acknowledges its truth but asserts that "the jury should have been told it could only consider items admitted into evidence." Br. of Appellant at 9. The analysis done as to the judge's answer to question 1 applies here as well. Ratliff's suggestion may have been the more prudent course, but the judge's answer certainly did not convey a personal opinion on any trial evidence.
Finally, there is no dispute that the judge's answer to questions 4 and 5 informed the jury of facts not in evidencethat Ratliff was arrested prior to the lineup and arrested in Washington County. This was improper and in direct contravention of article IV, section 16, which commands that "[j]udges shall not charge juries with respect to matters of fact." The only question is whether the error warrants a new trial. According to Ratliff, the prejudicial effect of the judge's answers was that they "left the jury to draw negative conclusions about Mr. Ratliff's arrest in Washington County and his participation in the line up." Br. of Appellant at 9.
The following analysis answers the constitutional harmless error issue as to Ratliff's CrR 6.15(f)(1) claim as well.
The only issue at trial was identity; the State, of course, argued that Ratliff was the perpetrator, and Ratliff put on evidence of an alibi, i.e., that he had been on an all-day outing with his girlfriend and her daughter. The State's evidence consisted mainly of identifications by employees of the establishment that was robbed.
One employee, Heidi Ammons, positively identified Ratliff at a line up and then again at trial. She stated that she based her in court identification on her recollection of the line up and her recollection of the crime.[3] Another employee, Kerry Walker, also identified Ratliff at the line up and, though somewhat equivocally, at trial too. The record is unclear as to whether she based her trial recollection on the line up or the crime, but the line up identification hinged on Ratliff's bright blue eyes. Walker testified that she was 97 percent positive about the line up identification. The third employee present, Linda Desper, identified a different line up participant as the perpetrator, though she made her selection because she "had a choice between two people, so I picked the one I thought looked like the right height and mustache." RP at 127.
There is no reason to believe that the jury was affected in any way by the judge's answers to questions 4 and 5. Although Ratliff's point that the jury would not have asked the questions if it did not expect to use the answers has some resonance, he fails to explain how the untainted evidencethe positive identifications in particulardoes not establish guilt beyond a reasonable doubt. In light of the identifications, the trial outcome would have been the same absent the errorsthe evidence of guilt was overwhelming, with the timing and location of Ratliff's arrest being irrelevant. The trial court's errors were harmless beyond a reasonable doubt.
Therefore, I would affirm the conviction and respectfully dissent from the majority.
NOTES
[1] The parties dispute whether the 2002 or 2003 version of CrR 6.15(f) applies. The amendment evident in the 2003 version was not effective until October 1, 2002, by which time Ratliff had already been tried and convicted. Therefore, the 2002 version applies.

Former CrR 6.15(f)(1) (2002) provides,
After retirement for deliberation, if the jury desires to be informed on any point of law, the judge may require the officer having them in charge to conduct them into court. Upon the jury being brought into court, the information requested, if given, shall be given in the presence of, or after notice to the parties or their counsel. Any additional instruction upon any point of law shall be given in writing.
[2] Ratliff does not challenge the validity of the witnesses' in-court identifications.
[3] Ratliff does not challenge the validity of the witnesses' in-court identifications.