
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35040-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK MICHAEL GARCIA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Patrick Garcia appeals from his convictions for second degree burglary and third degree theft, arguing that an erroneous jury instruction violated his right to a unanimous verdict and also prevents a retrial. We reverse the second degree burglary conviction due to the instructional error and remand for a new trial.

FACTS

The charges arose from an incident occurring on the property of April and Douglas Knigge in Moses Lake. About 6:00 a.m. on June 8, 2015, April Knigge was alerted by her barking dog to the presence of an unknown young man in the couple's backyard. Ms. Knigge saw Mr. Garcia, whom she identified at trial, standing about 20

feet from the camper trailer parked in their yard.[1] He was dressed in silky white shorts and sneakers, but had no shirt on. She saw Mr. Garcia empty into a garbage can the contents of a small white wastebasket that belonged in the camper trailer.

Ms. Knigge ordered Mr. Garcia off the property and then called the police. She watched the man walk past an empty lot and continue on toward a small trailer court. Two officers responded and one spotted Mr. Garcia in the nearby trailer park. Corporal Thomas Tufte contacted Mr. Garcia and observed toiletry items and two large bowie knives in his hands. A pat-down search of Mr. Garcia's shorts' pockets revealed additional items. Mr. Garcia told the officer that he had found the items in the nearby vacant lot and that he was at the trailer park to visit a friend.

Sergeant Jeffery Dean Gaddis questioned Garcia about the Knigge trailer. Mr. Garcia denied entering the trailer, but did state that he had picked up garbage and had picked up an extension cord outside the camper. He did not explain how he possessed a wastebasket from inside the trailer. Meanwhile, Corporal Tufte made inquiries around the trailer park but was unable to corroborate Mr. Garcia's claim that he was visiting a friend.

---

[1] From the descriptions in the record, it appears that part of the Knigge property was enclosed to some degree by a fence, but that the camper trailer was not in a fenced area.

2

Although originally charging one count of first degree burglary, by amended information the prosecutor charged one count of residential burglary and an alternative charge of second degree burglary, both accompanied by deadly weapon allegations, as well a charge of third degree theft.[2]  The case eventually proceeded to jury trial.

The trial court granted a defense motion in limine to prevent Corporal Tufte from repeating any hearsay statements he obtained during his interview of trailer park residents.  However, the court permitted the prosecutor over defense objection to ask the officer if he had been able to corroborate Mr. Garcia's statement that he was visiting a friend.  Tufte testified that he attempted to check out the statement, but "was not able to."

The State argued the case to the jury on the theory that Mr. Garcia had committed residential burglary of the camper trailer and that it constituted a "dwelling" because the Knigges had used it on a recent camping trip.  The items stolen from the trailer established Mr. Garcia's presence in the trailer.  The defense argued that no evidence put Mr. Garcia inside the camper and that the evidence established only that Mr. Garcia was guilty of the uncharged offenses of trespassing and possession of stolen property discovered in the adjoining field.  The defense also argued that the camper was not a dwelling because the Knigges were living in their house rather than in the camper.

---

[2] Four charges of "tagging and graffiti" in violation of the Grant County criminal code also were filed.  One charge was dismissed prior to trial and the other three counts were dismissed during trial.

3

The jury was given standard instructions relating to the two burglary charges. Instructions 12 and 15 displayed the differing elements of the two competing charges— burglary of a "dwelling" constituted residential burglary, while burglary of a "building" other than a "dwelling" was second degree burglary. Clerk's Papers (CP) at 51, 54. Instruction 14 defined the term building:

> Building, in addition to its ordinary meaning, includes any fenced area, railway car or cargo container. Building also includes any other structure used mainly, for carrying on business therein.

CP at 53.

During deliberations, the jury sent out a question: "Instruction 14, what is the definition of 'any fenced area'?" The court discussed the question with counsel, with the prosecutor pointing out that he was not relying on the fenced area theory of "building" and defense counsel suggested that the best response was simply to refer the jury back to the instructions. The court agreed and directed the jury to review its instructions.

The jury subsequently returned a not guilty verdict on the residential burglary charge, and guilty verdicts on the charges of second degree burglary and third degree theft. The jury also rejected the deadly weapon finding on the burglary count.

After the trial court imposed a bottom end sentence of 22 months in prison, Mr. Garcia appealed to this court. A panel considered the matter without argument.

ANALYSIS

This appeal presents two issues. The first issue concerns the second degree burglary verdict and the jury's inquiry. The second issue involves the admissibility at the retrial of evidence of the police investigation into Mr. Garcia's explanation for being in the trailer park. We address the issues in that order.

*Burglary Verdicts and Instructions*

The parties agree that the burglary count should be reversed due to the jury's possible reliance on a theory of burglary not supported by the evidence. They disagree on whether retrial is the correct remedy. However, our case law is clear that this type of error results in a new trial.

To satisfy the commands of art. I, § 21 of our state constitution, Washington requires that a jury verdict in a criminal case be unanimous. *State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014). In some instances, that means proof of unanimity of means when the jury is instructed on alternative means of committing a single crime. *Id.* When a jury considers an alternative means that was not supported by the evidence, the remedy is to reverse the conviction and remand for a new trial on the alternative means that was supported by the record. *State v. Green*, 94 Wn.2d 216, 235, 616 P.2d 628 (1980). In "multiple acts" cases where more different criminal actions were proved than were alleged, the constitution requires that the jury either be instructed on the need to agree on the specific act proved or the State must elect the specific act it is relying upon

5

in order to ensure that a unanimous verdict was returned. This type of error requires a new trial unless shown to be harmless beyond a reasonable doubt. *State v. Camarillo*, 115 Wn.2d 60, 64, 794 P.2d 850 (1990); *State v. Kitchen*, 110 Wn.2d 403, 405-406, 414, 756 P.2d 105 (1988).

Here, the parties agree that the Knigge property is only partially fenced.[3] They also agree that the jury's inquiry concerning the meaning of "fenced area" suggested that some members of the jury may have believed that a burglary was committed other than by entering the camper trailer.[4] In such a circumstance, Mr. Garcia correctly argues that jurors may have returned a verdict on a multiple acts case without agreeing on the same action.[5]

However, Mr. Garcia argues that the remedy should not be a new trial as typically is required in multiple acts cases such as *Kitchen* and *Camarillo*. Rather, because the

---

[3] Our record does not describe the fencing on or about the property, although it appears from the transcript that some of the exhibits, which were not transmitted to us, display fencing.

[4] Instruction 14 is derived from *11 Washington Practice: Washington Pattern Jury Instructions: Criminal* 2.05, at 40 (4th ed. 2016) (WPIC). It is questionable whether the definition was needed in this case: "Use this definition only if the term 'building' has other than its ordinary meaning." Notes on Use, WPIC 2.05. If used for illustrative purposes in the next trial, the court should at least excise the "fenced area" definition to avoid the possibility of jury confusion.

[5] *I.e.*, some jurors may have believed that Mr. Garcia burglarized the camper while others may have believed he entered into the incompletely fenced property with the intent to commit a crime such as stealing the extension cord. Since the entire property was not fenced, it did not constitute a "building" within the meaning of the statute.

property was not fully fenced, he fears that a jury member may have convicted him on the legally insufficient grounds that he burglarized the property rather than the camper trailer. *E.g.*, *State v. Engel*, 166 Wn.2d 572, 210 P.3d 1007 (2009); *State v. Wentz*, 149 Wn.2d 342, 68 P.3d 282 (2003). Evidence is insufficient to support a burglary conviction if the fenced area is not totally enclosed, resulting in reversal of the conviction. *Engel*, 166 Wn.2d at 580-581. Likening his situation to that one, Mr. Garcia speculates that because some juror may have voted for conviction based on a legally insufficient theory, his conviction also should be reversed.[6]

His analogy fails. The problem established here was possible lack of unanimity, an error that is remedied by granting a new trial. *Kitchen*, 110 Wn.2d at 414. In the more analogous situation where jury unanimity was not ensured because of legally insufficient evidence of one of the alternate means, the remedy also is a new trial on the legally sufficient means. *Green*, 94 Wn.2d at 235; *State v. Maupin*, 63 Wn. App. 887, 822 P.2d 355 (1992). We see no reason to create a special rule for Mr. Garcia's case. The possibility of a legally insufficient basis for conviction was the reason that the jury may not have been unanimous; it was not proof that the verdict was returned on an insufficient

---

[6] Mr. Garcia, understandably, does not argue that the acquittal on the residential burglary count has any effect on his case. *See Currier v. Virginia*, No. 16-1348 (June 22, 2018); *Dowling v. United States*, 493 U.S. 342, 347-352, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990); *Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970) (double jeopardy barred conviction on related later case due to collateral estoppel effect of acquittal on first case).

basis. There was ample evidentiary support for the theory of burglary elected by the prosecutor. In that circumstance we believe that the normal rule still applies—the remedy for a potentially nonunanimous verdict is a new trial. As in the instance of a legally insufficient *means* of committing the crime, the new trial must be limited to an *act* that is legally sufficient to support the burglary charge.

Accordingly, the second degree burglary conviction is reversed and the matter is remanded for a new trial on that charge.

*Evidentiary Issue*

Since the issue may arise at the retrial, we briefly address Mr. Garcia's claim that the court erred in authorizing testimony concerning police efforts to corroborate Mr. Garcia's explanation for his presence in the neighborhood. Although there were alternative methods of addressing this issue, including exclusion of the topic, the trial court did not abuse its considerable discretion in the handling of this issue.

Generally speaking, trial court judges have great discretion with respect to the admission of evidence and will be overturned only for manifest abuse of that discretion. *State v. Luvene*, 127 Wn.2d 690, 706-707, 903 P.2d 960 (1995). Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. Relevant evidence is generally admissible at trial,

8

but can be excluded where its value is outweighed by other considerations such as misleading the jury or wasting time. ER 402; ER 403.

The defense successfully moved in limine to prevent Corporal Tufte from repeating any hearsay relating to his investigation of Mr. Garcia's explanation for being in the trailer park. The defense did not challenge the relevance of the information, however, nor otherwise attempt to prevent the State from exploring the topic.[7] Thus, the trial court had very tenable reasons to allow the limited testimony that it permitted, consistent with the ruling in limine against elicitation of hearsay statements. Mr. Garcia prevailed on the motion and is not in a position to posit error.

The answer given by Corporal Tufte did not violate the motion in limine. His inability to corroborate the claim could be explained by several possibilities other than statements made by local residents. Perhaps no one talked to the corporal, or perhaps the person Mr. Garcia identified (if he even did name a specific person) could not be located. Other possible explanations can be imagined. The trial court did not err in authorizing the answer that it did.

---

[7] If the quality of the police investigation was not relevant to the trial, Mr. Garcia's statement about his reason for being at the trailer park could have been excluded from evidence and the parties foreclosed from arguing that topic or about the investigation. If the defense deemed the statement important to support its defense, which in part turned on the failure of police to discover evidence of Mr. Garcia's presence in the camper, it was quite understandable that the prosecutor would want to establish that efforts were made to attempt to corroborate the story.

No. 35040-1-III
*State v. Garcia*

The trial court is free to reconsider this issue at the next trial in light of the evidence and argument of the parties during that proceeding. Its handling of the matter at the first trial did not constitute error.

Affirmed in part, reversed in part, and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, C.J.

10