913 P.2d 808 (1996)
128 Wash.2d 918
The STATE of Washington, Respondent,
v.
Thomas Edward MAUPIN, Petitioner.
No. 63006-2.
Supreme Court of Washington, En Banc.
April 4, 1996.
*809 Paul J. Wasson, II, Spokane, for petitioner.
James Sweetser, Spokane County Prosecutor, Kevin M. Korsmo, Deputy, Spokane, for respondent.
TALMADGE, Justice.
Thomas Edward Maupin has twice been convicted for the 1988 felony murder of a six-year-old child. His first conviction was overturned by the Court of Appeals because the jury was allowed to speculate that Maupin committed a felony murder predicated upon rape when there was no evidence of sexual intercourse. In the second trial, Maupin sought to introduce the testimony of an alibi witness who would have testified to seeing the child alive and in the hands of persons other than Maupin after the State claims Maupin kidnapped and murdered the child. The trial court's decision excluding that testimony violated Maupin's constitutional right to call witnesses for his defense and requires a reversal of Maupin's conviction and a remand of his case for yet another trial.

ISSUES
1. Did the trial court violate Maupin's Sixth Amendment and art. I, § 22 (amend. 10) right to call witnesses in his defense when it excluded the testimony of a witness who claimed to have seen the victim with persons other than the defendant after the time the State claims she was abducted and murdered?
*810 2. If the exclusion of the witness was error, was the error harmless under the facts of this case?

FACTS
On January 25, 1988, the Spokane Police Department received a call that Tricna Dawn Cloy, the six-year-old daughter of Christine Fraijo, had disappeared during the night from the family home at 319 S. Ralph in Spokane. The previous evening, Ms. Fraijo, accompanied by her four-year-old son Elston and Tricna, attended a birthday party at the home of a neighbor. Thomas Edward Maupin was also a guest at the party. The subsequent facts, involving the late night abduction of Tricna and her disappearance until her body was found in a gravel pit nearly six months later, are set forth in detail in State v. Maupin, 63 Wash.App. 887, 889-92, 822 P.2d 355, review denied, 119 Wash.2d 1003, 832 P.2d 487 (1992). There is no need to repeat those facts.
In February 1989, Maupin waived extradition from Ohio in order to stand trial in Spokane County on the charge of felony murder predicated on the underlying crimes of second degree kidnapping and first degree rape or attempted rape. Maupin was convicted by a jury of first degree felony murder and sentenced to an exceptional term of 480 months.
On appeal, the Court of Appeals, Division III, held there was no evidence of sexual intercourse. Maupin, 63 Wash.App. at 893, 822 P.2d 355. Thus, the trial court had erred in instructing the jury on rape and attempted rape. Although the jury might have found that the kidnapping charge supplied the predicate offense to the felony murder charge, the court did not provide the jury with a special verdict form to indicate on which offenserape or kidnappingit had based the conviction. In the absence of a finding by the jury as to which predicate offense was the basis for the conviction, the Court of Appeals had no choice but to set aside the verdict. Maupin, 63 Wash.App. at 893-94, 822 P.2d 355.
In accordance with instructions from the Court of Appeals, the State on remand filed an amended information charging Maupin with first degree felony murder based on the predicate crime of kidnapping. As in the first trial, the State's chief witness was Tricna's brother, Elston Cloy, who testified that he saw Maupin carrying Tricna off in the middle of the night. Elston was four years old at the time of the kidnapping, and ten years old at the time of his testimony in Maupin's second trial.
During the trial, Maupin wanted to have James Brittain testify. Brittain claimed to have seen Tricna Cloy, the day after she was kidnapped, being carried wrapped in a blanket by a Daniel McIntosh. Brittain claimed that McIntosh and another individual kept Tricna in a room in a house where Brittain was staying. According to Brittain, McIntosh and the other man took the girl away early the following morning. Brittain first told this story to Detective James Peterson on September 12, 1991. A defense investigator subsequently interviewed Brittain on September 24, 1991.
The State filed a motion to exclude Brittain's testimony. The State based its motion on purported inconsistencies, and on the inability of that testimony to connect McIntosh or anyone else with the crime, citing State v. Downs, 168 Wash. 664, 13 P.2d 1 (1932) (exclusion of evidence that does not connect another with a crime is proper because of lack of foundation). The State appended to its motion Detective Peterson's report, the defense investigator's verbatim interview with Brittain, and the affidavit of Detective Peterson,[1] purporting to contain the statements of Daniel McIntosh denying Brittain's story. Detective Peterson in his report said he did not believe Brittain because Brittain said he saw Tricna with McIntosh the day and evening before she was kidnapped. There is nothing in Peterson's report, however, that identifies exactly when Brittain saw Tricna in relation to the time of the abduction. In his interview with the defense investigator *811 12 days later, Brittain was explicit that he saw Tricna the day after the kidnapping.
The parties argued the State's motion to exclude Brittain's testimony during the trial. Pursuant to the judge's request, Maupin made an offer of proof consisting of the transcript of the defense investigator's interview with Maupin on September 24, 1991. The State made no counteroffer of proof. The trial court rendered a lengthy oral decision on December 14, 1992. In granting the motion to exclude Brittain's testimony, the court appeared to be persuaded that even if Brittain were believed, his testimony would not exculpate Maupin:
We have potentially a 24-hour period after the noticing of the absence of Tricna, in which she may very well have been alive. Part of the State's burden, of course, is to prove death by criminal means or by a criminal agency. That is a matter that will have to be argued to the jury. But if in fact [Brittain's testimony] would show that she was alive, I would not find that relevant to the charge in this particular case. It still, in the Court's judgment, would be evidence upon which the jury would be asked to speculate.
Report of Proceedings at 1904-05.
The trial proceeded without Brittain's testimony, and the jury found Maupin guilty of first degree murder while committing and attempting the crime of second degree kidnapping. The court again imposed an exceptional sentence of 480 months (the standard range was 240 to 320 months). Maupin again appealed his conviction, making 12 assignments of error, including the trial court's exclusion of Brittain's testimony. The Court of Appeals affirmed the conviction and sentence, agreeing with the State's argument about the Downs doctrine:
Mr. Maupin argues that Mr. Brittain would not have testified about a third party's involvement, but would have testified that he saw Tricna with a third party after she had been taken from her home. This is a distinction without a difference. The testimony indicates a third party's connection with the crime, that is, someone's guilt besides Mr. Maupin's. The court did not err in excluding the testimony.
State v. Maupin, No. 13056-8-III, slip op. at 19 (Wash.App., May 11, 1995). The Court of Appeals did not address the State's argument that the exclusion of Brittain's testimony was harmless error.
Maupin petitioned for review of all of his rejected assignments of error from the Court of Appeals. We accepted review of only one issuewhether the trial court erred in excluding the testimony of James Brittain.

ANALYSIS
Both the Sixth Amendment of the Federal Constitution and art. I, § 22 (amend. 10), of the Washington Constitution guarantee an accused the right to compulsory process to compel the attendance of witnesses. State v. Hudlow, 99 Wash.2d 1, 14-15, 659 P.2d 514 (1983). See also RCW 10.52.040; CrR 6.12. The right guaranteed by the Sixth Amendment was recognized and applied to the states in Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). There, the Court described importance of the right:
The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.
Washington, 388 U.S. at 19, 87 S.Ct. at 1923, cited with approval by State v. Smith, 101 Wash.2d 36, 41, 677 P.2d 100 (1984). "The guaranty of compulsory process is `a fundamental right and one "which the courts should safeguard with meticulous care".'" State v. Burri, 87 Wash.2d 175, 181, 550 P.2d 507 (1976), citing Feguer v. United States, 302 F.2d 214, 241 (8th Cir.), cert. denied, 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110.
*812 A. Relevance
The right to present defense witnesses is not absolute as "a criminal defendant has no constitutional right to have irrelevant evidence admitted in his or her defense." Hudlow, 99 Wash.2d at 15, 659 P.2d 514. Here, the State asserts first that Brittain's testimony would have been irrelevant as to Maupin's guilt or innocence,[2] relying on Downs, 168 Wash. 664, 13 P.2d 1. In Downs, two hours after a burglary, police discovered Downs and Phillips in a car within two miles of the site of the burglary. Downs had a .38-caliber revolver, fully loaded and cocked, in a holster slung under his arm. Phillips had $15.68, mostly in change, in his side pocket. Downs had $82.17, and about $101.95 was in a cigar box and scattered about the back seat of the car. They were arrested and charged with the burglary. At their trial, Downs and Phillips attempted to introduce evidence that a well-known burglar named Madison Jimmy was in town and had the opportunity to commit the burglary. Downs and Phillips offered no evidence to show that Madison Jimmy was in any way connected with the burglary. The court refused to admit the evidence of Madison Jimmy's presence.
In upholding the exclusion of that evidence, we noted, "where there is no other evidence tending to connect such outsider with the crime ... his bad character, ..., his means or opportunity to commit, or even his conviction of, the crime, is irrelevant to exculpate accused[.]" Downs, 168 Wash. at 667, 13 P.2d 1 (citing 16 C.J. 559). Mere opportunity to commit the crime is not enough. Id. at 668, 13 P.2d 1. Such evidence would be "the most remote kind of speculation." Id.
The State argues Brittain's testimony would not have exculpated Maupin, because the addition of other suspects did not preclude Maupin's having committed the crime. Maupin argues Brittain's testimony was both relevant and material to his defense. Brittain "would have, if permitted to testify, told the jury he saw Tricna Cloy with an identified third party (McIntosh) after she had been allegedly taken from her home by appellant." Br. of Appellant at 80.
The relevance of Brittain's testimony is brought into sharp focus by the State's charge against Maupin. The Amended Information of May 13, 1992, charges the death of Tricna Cloy "occur[red] on or about January 25, 1988." Clerk's Papers at 470. In closing argument, the State said:
Additionally, along those same lines, this occurred on or aboutnotice the language says "on or about January 25, 1988." We have that as a date that she was killed. From everything, ladies and gentlemen, that you will be looking at, I think you will be [sic] agree the evidence shows that she was killed right about that date. We're not talking she was kept alive somewhere for a long period of time or anything like that. It had to have been right at that particular period of time when she was killed.
Report of Proceedings at 2146. Tricna was abducted in the early morning hours of January 25, 1988. At his interview on September 24, 1991, Brittain stated the following with respect to the time he saw Tricna with McIntosh:
Mr. Proctor: Okay, let's back up for just a minute. Now this is the morning, or the afternoon of the day that she disappeared.
Mr. Brittain: No, the afternoon after she disappeared.
Mr. Proctor: Okay, like if she was to disappear today, it would be tomorrow afternoon at 1:00 o'clock?
Mr. Brittain: Yes.
Brittain's statement could mean either the afternoon of January 25 or the afternoon of January 26. Either way, Brittain's story directly contradicts, or at least raises considerable doubt about, the State's claim that the murder occurred right after the kidnapping on January 25.
*813 The crux of Maupin's argument is that the Downs doctrine does not apply in this case, where the evidence Maupin sought to introduce was not for the purpose of inducing speculation about another's opportunity to commit the crime, but instead involved an eyewitness who placed the abducted child with other persons at a time after Maupin was supposed to have kidnapped and murdered her. We agree.
When Washington courts have invoked the Downs doctrine to exclude witnesses for the defense, the basis has been the lack of connection of the proffered testimony to the crime. In State v. Clark, 78 Wash. App. 471, 898 P.2d 854, review denied, 128 Wash.2d 1004, 907 P.2d 296 (1995), for instance, the Court of Appeals upheld the trial court's exclusion of evidence a person other than the defendant had committed arson because the defendant could show no connection other than motive between the other person and the crime. Motive alone was not enough: "[m]ere evidence of motive in another party, or motive coupled with threats of such other person, is inadmissible, unless coupled with other evidence tending to connect such other person with the actual commission of the crime charged." State v. Kwan, 174 Wash. 528, 533, 25 P.2d 104 (1933), cited with approval in State v. Russell, 125 Wash.2d 24, 77, 882 P.2d 747 (1994), cert. denied, ___ U.S. ___, 115 S.Ct. 2004, 131 L.Ed.2d 1005 (1995). In Russell, a first degree murder case, the defendant attempted to introduce evidence that two other men had a motive to kill one of the victims. The trial court excluded the evidence and this court affirmed, citing Kwan for the proposition that mere evidence of the existence of someone else's motive to commit the crime is not enough.
In In re Personal Restraint of Lord, 123 Wash.2d 296, 315-16, 868 P.2d 835, cert. denied, ___ U.S. ___, 115 S.Ct. 146, 130 L.Ed.2d 86 (1994), we affirmed the exclusion of certain evidence:
Lord claims the trial court erred in excluding evidence that (a) other individuals had refused to give hair samples or take polygraph examinations when the police asked them to do so, (b) one of Parker's neighbors owned a blue pickup truck which was not seen after Parker disappeared, (c) Parker's boyfriend wanted to have sex with her, (d) Parker had expressed concern about being followed by someone in a car, (e) several other persons had access to the U-Haul blanket and the residence in which Parker had last been seen alive. The trial court excluded this evidence under State v. Mak, 105 Wash.2d 692, 716-17, 718 P.2d 407, cert. denied, 479 U.S. 995, [107 S.Ct. 599, 93 L.Ed.2d 599] (1986), which holds that evidence connecting another person with the crime charged is not admissible unless there is a train of facts or circumstances which tend clearly to point to someone other than the defendant as the guilty party. See also State v. Downs, 168 Wash. 664, 667, 13 P.2d 1 (1932); State v. Kwan, 174 Wash. 528, 533, 25 P.2d 104 (1933). Lord does not explain how any of the above evidence tends to point clearly to anyone else as the guilty party.
Unlike any of the Downs line of cases, and contrary to the State's argument, Brittain's testimony was neither evidence of another's motive nor mere speculation about the possibility that someone else might have committed the crime. Instead, Brittain would have testified he saw the kidnapped girl with someone other than the defendant after the time of kidnapping. Although the State correctly notes this testimony would not necessarily have exculpated Maupin, as he may have been acting in concert with the persons Brittain claimed to have seen, it at least would have brought into question the State's version of the events of the kidnapping. An eyewitness account of the kidnapped girl in the company of someone other than Maupin after the time of the kidnapping certainly does point directly to someone else as the guilty party, as Downs requires.
B. Harmless Error
The State contends that even if it was error to exclude Brittain's testimony, the error was harmless because Brittain's testimony was incredible. Br. of Resp't at 27-29. It is "the well established law of this state that even constitutional errors may be so insignificant as to be harmless." State v. *814 Hoffman, 116 Wash.2d 51, 96-97, 804 P.2d 577 (1991). "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." State v. Guloy, 104 Wash.2d 412, 425, 705 P.2d 1182 (1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1208, 89 L.Ed.2d 321 (1986). Violation of the defendant's constitutional right to compulsory process is assumed to be prejudicial, and the State has the burden of showing the error was harmless. Burri, 87 Wash.2d at 181-82, 550 P.2d 507.
In its brief, the State lists numerous purported discrepancies between Brittain's statements and the statements of other witnesses, and between Brittain's statements and the actual evidence in the case. The State does not reference the appellate record to support these discrepancies. For example, the State asserts: "Additional police reports contain interviews with all of the persons named by BrittainMitchell, McIntosh, Chastity Statton, Chad Counts, and Jennifer Heckall of whom dispute nearly every statement he made." Br. of Resp't at 32 n. 18. Those reports are not in the appellate record. The State concludes Brittain's "story was created out of whole cloth and it would have been destroyed at trial if presented.... Any error in excluding Brittain's flight of fantasy was harmless beyond a reasonable doubt." Br. of Resp't at 32-33. The State suggested in oral argument that Brittain is a pathological liar who is so unreliable that he would not be called as a witness at trial, and asks this court to agree Brittain's testimony was so unbelievable that its exclusion was harmless error.
While it is conceivable a witness's proffered testimony is so incredible that its exclusion is harmless error, we cannot make such a determination from the record because the State offers no evidence in support of its assertion. The appellate record contains Maupin's offer of proof consisting of the transcripts of Brittain's interviews, and nothing more.
An appellate court ordinarily does not make credibility determinations. Zillah Feed Yards, Inc. v. Carlisle, 72 Wash.2d 240, 244, 432 P.2d 650 (1967) ("The credibility and weight to be attached to the testimony of respondent's witnesses and to the content of the exhibits were for the trier of the facts."). We must take Brittain's testimony here as true, and evaluate its likely effect on the outcome of the trial. A reading of that testimony casts substantial doubt on the State's version of the crime. Brittain places Tricna in the hands of two men other than Maupin on the day after the State argued Tricna was murdered. Under those circumstances, it is impossible to conclude a reasonable jury would have reached the same result beyond a reasonable doubt had Brittain's testimony been given. The State has not carried its burden of showing harmless error.

CONCLUSION
We fully recognize the trauma a third trial represents for the family of Tricna Dawn Cloy. They have endured the two prior trials in this case. Significant errors in the two previous trials have compelled reversal of Maupin's convictions and the granting of a new trial in each instance. But we are also mindful of the right of Thomas Edward Maupin to a fair trial on this most serious charge. Our system of justice so requires.
The trial court's exclusion of the testimony of Brittain denied Maupin his federal and state constitutional rights to present witnesses in his own defense. We reverse the conviction, vacate the sentence, and remand the case for a new trial.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER and SANDERS, JJ., concur.
NOTES
[1] Peterson's affidavit is plainly hearsay, but no motion to strike it by Maupin appears in the record.
[2] Even relevant evidence may be excluded to avoid prejudice when there is a compelling state interest. Hudlow, 99 Wash.2d at 15-16, 659 P.2d 514. The State does not make that argument here.