FILED
COURT OF APPEALS
DIVISION II

2015 JUL 28 AM 8: 24

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45582-0-II |
| Respondent, | |
| v. | |
| | UNPUBLISHED OPINION |
| STEPHEN ADAM YOUNG, | |
| Appellant. | |

MAXA, J. — Stephen Young appeals his convictions for attempted first degree murder, first and second degree assault, and witness tampering. The convictions related to an incident in which Young fired shots at a moving vehicle and a separate incident in which he shot a friend in the back of the head. We hold that (1) the trial court erred by admitting evidence that Young was a "skinhead" and had certain white supremacist tattoos, but the error was harmless; (2) Young's counsel did not provide ineffective assistance of counsel by failing to request a limiting instruction on the white supremacist evidence because the decision not to request a limiting instruction may have been tactical; (3) sufficient evidence supported the premeditation element of attempted murder; and (4) none of the issues Young raises in his statement of additional grounds (SAG) have merit. Accordingly, we affirm Young's convictions.

## FACTS

In the fall of 2010, Young was in a romantic relationship with Deanna Treptow. On October 27, Treptow spent the day with an African-American man, Marlon Green. That

evening, Treptow and Green met up with Green's friends, Heather Martin and David Moore. The four went to the house of another friend, Riki Perasso. While at the house, Perasso received a phone call from an unidentified caller asking whether Treptow and Green were sleeping together. Green took the phone from Perasso and engaged in a heated conversation with the caller.

That same evening, Carrie Taylor-Edwards picked up Young in her car. Young asked Taylor-Edwards to take him to Perasso's house. Young then told her to pull over and turn off her headlights. Young got out of the car and engaged in a heated conversation on his mobile phone.

Green, Treptow, Moore, and Martin eventually left Perasso's house in a white sport utility vehicle (SUV), with Martin driving. As Martin drove away, gunshots were fired at the SUV, hitting Martin and grazing Green. Taylor-Edwards heard gunshots coming from Young's location outside her car and saw an SUV drive by. Young got back into Taylor-Edwards' vehicle and told her to follow the SUV, but Taylor-Edwards refused and drove Young to a motel where some of his friends were staying. At the motel, Young told his friends he had just "shot at some girls," and Taylor-Edwards confirmed that Young had shot at some people. Report of Proceedings (RP) at 1676.

Young began acting paranoid and brandishing a handgun. Later that night, Young left the motel with two friends, Bryan Branch and Brandon Crowe, to go to another friend's house. They then left that house to drive to yet another friend's house. Branch was driving, Crowe was in the front passenger seat, and Young was in the backseat directly behind Branch.

Young began to interrogate Branch as to why Branch was taking him to the house. He began to insinuate that Branch somehow was involved with Green and was lying to cover up that involvement. At one point, Young told Branch to take an abrupt turn off the main road. Branch did so, but his car stalled as he approached a stop sign. Young then reached forward from the back seat, put his gun up to the back of Branch's head, and shot him. Young then shot him again, apparently after repositioning the gun at the base of Branch's skull. He pointed the gun at Crowe and threatened him, and Crowe ran from the vehicle into a nearby house. Branch was seriously injured, but survived.

Police apprehended Young and later found his handgun. Forensic evidence connected the handgun to both shootings.

The State charged Young with one count of attempted first degree murder for his attack on Branch; five counts of first degree assault for his attacks on Branch, Green, Martin, Moore, and Treptow; one count of second degree assault for his threat against Crowe; two counts of unlawful possession of a firearm; one count of witness intimidation for later threatening Taylor-Edwards; and one count of witness tampering for later sending a letter to a friend asking him to fabricate an alibi for the night of the shootings. The firearm possession charges were decided by bench trial, and the trial court found Young guilty of both counts[1].

The remaining charges were tried to a jury in October 2012, but the trial ended in a mistrial. A second jury trial took place in September 2013.

---

[1] There is no indication that Young is appealing these convictions.

A small part of the State's case at the second trial involved the production of evidence that Young was a "skinhead," was tattooed with a skinhead or white supremacist symbol, and had tattoos of a swastika, lightning bolts, and a portrait of Adolph Hitler. According to trial testimony, Young did not associate with African-Americans. The evidence also showed that Young was angry that his girlfriend might be sleeping with an African-American man.

The jury found Young guilty of all counts except witness intimidation. Young appeals his convictions.

## ANALYSIS

### A.    ADMISSION OF "WHITE SUPREMACIST" EVIDENCE

Young argues that the trial court erred by admitting evidence that Young was a white supremacist and a member of a skinhead group because that evidence was inadmissible under ER 404(b). We agree, but hold that this error was harmless.

#### 1.    Legal Principles

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, this evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b) must be read in conjunction with ER 403, which requires the trial to court to exercise its discretion in weighing the probative value of the evidence against its prejudicial effect. *State v. Gunderson*, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014).

We review the trial court's interpretation of ER 404(b) de novo as a matter of law. *Id.* at 922. If the trial court interprets the rule correctly, we review the decision to admit evidence

4

under ER 404(b) for an abuse of discretion. *Id.* A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Id.*.

2.    Admissibility Under ER 404(b)

Young argues that the trial court erred in admitting evidence suggesting that Young was a white supremacist – specifically, evidence that Young was a skinhead and had tattoos of skinhead or white supremacist symbols and Hitler – because its probative value was low and the potential for undue prejudice was high. We agree.

The trial court stated that the white supremacist evidence was relevant to establish Young's motive for the first shooting. According to the State, the evidence was relevant because Young's white supremacist beliefs motivated him to shoot an African-American man who may have been sleeping with his girlfriend. Under ER 404(b), prior act evidence can be admissible to prove motive. *See, e.g., State v. Yarbrough*, 151 Wn. App. 66, 83-84, 210 P.3d 1029 (2009) (holding that gang affiliation is admissible under ER 404(b) to show motive for the murder of a rival gang member). Motive is an "impulse, desire, or any other moving power which causes an individual to act." *State v. Powell*, 126 Wn.2d 244, 259, 893 P.2d 615 (1995). Evidence of motive is admissible even when it is a not an element of the charged crime. *Yarbrough*, 151 Wn. App. at 83.

Here, the State presented minimal evidence that being a skinhead or having certain white supremacist tattoos created a motive for Young's attempt to assault Green. The only evidence explaining what it meant to be a skinhead was an answer to a single question from one of Young's acquaintances:

5

Q: And did you, in fact, recall testifying previously that he is like a Skinhead, or something, and that he didn't kick it with black people?

. . .

A: They don't kick it with black people, and yeah, so that's, you know, what I know a Skinhead to be, I guess.

RP at 1594. The State presented no evidence about what it meant to have tattoos of white supremacist symbols, swastikas, or Hitler, although a jury could infer that those tattoos indicated that Young believed that white people were superior to African-American people. This evidence was sufficient to establish that Young did not associate with African-American people, and the State also produced some direct evidence of that fact.

However, choosing not to associate with African-American people or believing that white people are superior to African-American people is quite different than having a motive to assault an African-American person. To be relevant, evidence that Young was a skinhead or had certain tattoos had to show that Young had some animus toward African-American people in general. The State produced no such evidence.

The jury could infer from *other* evidence that Young had some animus toward African-American people. Young may have used the "n word" to describe Green.[2] And there was some evidence suggesting that Young was particularly angry that his girlfriend might be sleeping with an African-American. But there was no evidence connecting this animus with being a skinhead or having tattoos of white supremacist symbols, swastikas, or Hitler.

The State cites *State v. Monschke*, which discusses white supremacists as an identifiable group with a shared set of beliefs and customs that include standing up for the white race. 133

---

[2] One witness said in a pretrial statement that Young used the "n word" to describe Green, but at trial did not remember making that statement.

6

Wn. App. 313, 330, 135 P.3d 566 (2006). However, in that case the State presented expert testimony that explained what it meant to be a white supremacist. *Id.* at 326-27, 330. Here, the State presented no such testimony.

Although we review evidentiary decisions under ER 404(b) for an abuse of discretion, here the State produced no evidence connecting skinhead affiliation or white supremacist tattoos to Young's motive for attempting to assault Green. Accordingly, we hold that the trial court erred in admitting white supremacist evidence under ER 404(b).[3]

3. Harmless Error

A trial court's error in admitting evidence in violation of ER 404(b) may be harmless. *State v. Gower*, 179 Wn.2d 851, 854, 321 P.3d 1178 (2014). Such an evidentiary error is not of constitutional magnitude. *Id.*; *State v. Binh Thach*, 126 Wn. App. 297, 311, 106 P.3d 782 (2005). Under the nonconstitutional harmless error standard, an error is grounds for reversal only if it has prejudiced the defendant. *See Gower*, 179 Wn.2d at 854. The test is whether there is a reasonable probability that the outcome of the trial would have been materially affected absent the error. *Id.*

Here, there was extensive admissible evidence that demonstrated Young's guilt on the charges. Young had Taylor-Edwards drive him to a location where Green was present. Taylor-Edwards heard gunshots coming from where Young stood outside her car as an SUV passed. Taylor-Edwards and Young himself told friends that Young had fired shots at some people.

---

[3] Young also argues that the trial court erred in not excluding the white supremacist evidence under ER 403. Because we hold that the trial court erred under ER 404(b), we do not address ER 403.

7

There also was strong evidence of motive – Young believed that Green was sleeping with his girlfriend. There also was eyewitness testimony that Young shot Branch in the back of the head. Given this evidence, there is no indication that admission of the white supremacist evidence materially affected the trial outcome.

Moreover, the prejudice of admitting the white supremacist evidence was minimal for the same reason that the evidence was inadmissible – there was no evidence regarding what it meant to be a skinhead or a white supremacist. The fact that Young was a skinhead and had various tattoos may have had vague negative connotations. But the State presented no evidence that would have caused a jury to believe that being a skinhead or having those tattoos made Young more likely to commit crimes. In addition, the State did not emphasize the white supremacist evidence. At closing argument, the State did not even mention Young's affiliations or tattoos. In the overall context of the extensive evidence presented that Young was responsible for the two crimes, the white supremacist evidence was insignificant.

The evidence shows that there is no reasonable probability that the outcome of the trial would have been materially affected if the trial court had not admitted the white supremacist evidence. Therefore, we hold that the trial court's error was harmless.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Young claims that he received ineffective assistance of counsel because once the white supremacist evidence was admitted, his trial counsel did not request a limiting instruction regarding the jury's consideration of that evidence. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant's right to effective assistance of

counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Where a criminal defendant has been denied effective assistance of counsel, we will reverse any resulting conviction and remand for a new trial. *See id.*

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on such a claim, the defendant must show that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. We presume counsel's performance was not deficient. *Id.* at 33. The defendant may rebut this presumption by showing that the performance was not a matter of legitimate trial strategy or tactics, and fell below an objective standard of reasonableness. *Id.*

When the trial court admits evidence under ER 404(b), the defendant generally is entitled to a limiting instruction stating that the evidence cannot be used to show the defendant's bad character. *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). A failure to request such an instruction may constitute deficient performance where the lack of the instruction presents the jury with an inaccurate or incomplete picture of the law. *See State v. Thomas*, 109 Wn.2d 222, 228, 743 P.2d 816 (1987); *see also State v. Cienfuegos*, 144 Wn.2d 222, 229-30, 25 P.3d 1011 (2001).

However, the "failure to request a limiting instruction for evidence admitted under ER 404(b) may be a legitimate tactical decision not to reemphasize damaging evidence." *Yarbrough*, 151 Wn. App. at 90. Young's attorney may have made a calculated tactical decision not to draw the jury's attention to the limited evidence of Young's white supremacist beliefs and affiliation. At the end of Young's first trial, his counsel made it clear that he was concerned

9

about highlighting unfavorable evidence with instructions. Because the State did not emphasize the white supremacist evidence at the second trial, it may have been sensible for Young's attorney to decide not to remind the jury of that evidence with a limiting instruction. Young claims that the failure to request a limiting instruction was inadvertent, but he points to nothing in the record that supports this claim.

We hold that Young has failed to rebut the presumption that his counsel's performance was not deficient. Therefore, we hold that Young has not shown that he received ineffective assistance of counsel.

C.    SUFFICIENCY OF EVIDENCE

Young argues that his conviction for attempted first degree murder of Branch was based on insufficient evidence because the State did not offer evidence supporting the necessary element of premeditation. We disagree.

A criminal defendant challenging the sufficiency of the State's evidence on appeal admits the truth of that evidence, and we draw all reasonable inferences therefrom in the State's favor. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Owens*, 180 Wn.2d 90, 99, 323 P.3d 1030 (2014).

To convict a defendant of attempted first degree murder, the State must prove beyond a reasonable doubt that the defendant acted with premeditated intent to kill another. RCW 9A.32.030(1)(a); *State v. Barajas*, 143 Wn. App. 24, 36, 177 P.3d 106 (2007). "[P]remeditation is 'the deliberate formation of and reflection upon the intent to take a human life' and involves

10

'the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short.' " *State v. Pirtle*, 127 Wn.2d 628, 644, 904 P.2d 245 (1995) (quoting *State v. Gentry*, 125 Wn.2d 570, 597-98, 888 P.2d 1105 (1995)). Premeditation may be inferred from circumstantial evidence as long as substantial evidence supports the inference. *Pirtle*, 127 Wn.2d at 643; *Barajas*, 143 Wn. App. at 36. Particularly probative evidence of premeditation includes evidence of a motive to kill and evidence of a manner of killing suggesting prior reflection or planning. *Pirtle*, 127 Wn.2d at 644.

Here, the State presented extensive circumstantial evidence indicating that Young acted with premeditated intent. Testimony showed that before and during the car ride, Young suspected that Branch was helping Green retaliate against him. This was strong motive evidence.

As to the manner of killing, the evidence showed that Young told Branch to turn off onto a side street shortly before shooting him. This evidence supports an inference that Young planned to shoot him in a less conspicuous place. Further, testimony and photographs showed that Young shot Branch in the head twice from behind, repositioning the gun after the first shot to aim more directly at the center of his head. Evidence that the defendant shot a defenseless victim from behind multiple times strongly suggests premeditation. *State v. Notaro*, 161 Wn. App. 654, 672, 255 P.3d 774 (2011).

Taken together and viewed in the light most favorable to the State, this circumstantial evidence shows that Young formed a deliberate intent to kill Branch and acted on that intent. We should hold that this evidence was sufficient to prove premeditation and support Young's conviction for attempted first degree murder.

D. SAG Issues

1. Other Suspect Evidence

Young argues that the trial court erred by ruling that he could not cross-examine Green regarding an altercation in which Green participated just before the first shooting in order to show that someone other than Young had a motive to shoot Green. We disagree.

Young intended to cross-examine Green about the altercation to support his theory that somebody other than Young may have been responsible for the shooting. Other suspect evidence is only admissible if the proponent can show some nexus "tending to connect such other person with the *actual commission* of the crime charged."[4] *State v. Franklin*, 180 Wn.2d 371, 379, 325 P.3d 159 (2014) (emphasis added). Evidence that another person had a motive to commit the crime – or even had a motive and the opportunity to commit it – is insufficient to show such a nexus. *State v. Russell*, 125 Wn.2d 24, 77, 882 P.2d 747 (1994). We review a trial court's exclusion of evidence for an abuse of discretion. *Franklin*, 180 Wn.2d at 377 n.2.

Here, Young sought to elicit evidence that another participant in the altercation had a motive, and perhaps an opportunity, to shoot at Green. But without some other evidence tending to show that another individual in fact shot at Green or was otherwise involved in the crime, the evidence Young sought was inadmissible to support an other suspect theory.

---

[4] Young focuses on the relevance of the evidence, arguing that it was at least minimally probative of his guilt. But the problem with attenuated other suspect evidence is not that it is irrelevant, but that its potential to confuse the issues and increase the length and complexity of the trial greatly exceeds its probative value. *See Franklin*, 180 Wn.2d at 380; *State v. Mak*, 105 Wn.2d 692, 716, 718 P.2d 407 (1986).

Young seems also to argue that Green's lifestyle was such that many people wanted to harm him and might have been responsible for the shooting. But our Supreme Court in *State v. Mak* cautioned specifically against admission of such generalized motive evidence:

> "[I]f evidence of motive alone upon the part of other persons were admissible . . . in a case involving the killing of a man who had led an active and aggressive life it might easily be possible for the defendant to produce evidence tending to show that hundreds of other persons had some motive or *animus* against the deceased; [and] a great many trial days might be consumed in the pursuit of inquiries which could not be expected to lead to any satisfactory conclusion."

105 Wn.2d 692, 717, 718 P.2d 407 (1986) (quoting *People v. Mendez*, 193 Cal. 39, 52, 223 P. 65 (1924)) (emphasis in original). This potential for increasing the burdens on the trial court greatly outweighs the probative value of such evidence. *See State v. Maupin*, 128 Wn.2d 918, 927, 913 P.2d 808 (1996).

We hold that the trial court did not abuse its discretion by sustaining the State's objection and disallowing cross-examination regarding the altercation and production of generalized other suspect evidence.

2.   Prosecutorial Misconduct

Young argues that the prosecutor committed prejudicial misconduct and thereby denied him a fair trial in two ways: by presenting a mobile phone to a witness, and by stating during closing argument that a defense argument was a "red herring." We disagree and hold that neither instance rose to the level of misconduct.

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). We

13

examine the prosecutor's conduct and whether prejudice resulted therefrom by considering the evidence presented, the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) Misconduct is prejudicial if there is a substantial likelihood it affected the verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

### a. Mobile Phone

Young argues that the prosecutor committed misconduct by questioning a witness about the contents of the witness's mobile phone. We do not consider this issue because it depends on evidence not in the record.

Young claims that he was never allowed to examine the contents of the phone, and therefore its production and use during direct examination was improper. But Young does not cite to any part of the record showing that he was unable to examine the phone or that its contents were not made otherwise discoverable. Because this claim requires consideration of evidence not in the appellate record, we do not consider it.[5] *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). If Young wishes to raise this claim, the appropriate means is a personal restraint petition. *Id.*

### b. Characterization of Defense Argument as a "Red Herring"

Young argues that the prosecutor also committed misconduct by referring to a defense argument as a "red herring" during closing argument. We disagree.

---

[5] Young also claims on the same grounds that the trial court erred in admitting the evidence under CrR 4.7 and ER 404(b). These arguments, to the extent they are distinct, similarly depend on the discovery-related evidence not in our record. Young also fails to develop the arguments, making them too vague for review. *See* RAP 10.10.

14

During closing, the prosecutor discussed the defense argument that the State had failed to produce at trial a police investigator who conducted important interviews. The prosecutor referred to this argument as a red herring because another investigator who testified at trial had conducted the interviews. The prosecutor implored the jury not to "fall for it." RP at 2635. Young did not object to this line of argument at the time.

It is improper for a prosecutor to impugn defense counsel's integrity during closing argument. *Thorgerson*, 172 Wn.2d at 451. But where a defendant fails to object to the prosecutor's conduct, he waives his right to later claim that it was misconduct unless that conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61.

Describing an argument as a red herring figuratively indicates that the argument is intended to mislead the jury by directing its attention to something unimportant. While such a description might impugn defense counsel's integrity under certain circumstances, in the context of the argument in this case it did not. The prosecutor simply was arguing to the jury that the defense's focus on the investigator who did not testify was misguided, and that the jury should not consider the investigator's absence meaningful. In context, this was not so flagrant or ill-intentioned as to produce incurable prejudice. Therefore, we hold that Young waived his claim of misconduct.

3. Ineffective Assistance of Counsel

Young argues that both his trial and appellate counsels provided ineffective assistance. We disagree.

As noted above, we review claims of ineffective assistance of counsel de novo. *Sutherby*, 165 Wn.2d at 883. To prevail on such a claim, the defendant must show that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33.

a. Trial Counsel

Young argues that his trial counsel provided ineffective assistance because he did not impeach two witnesses with prior inconsistent statements offered as testimony in Young's first trial. As Young notes, a witness may be impeached on cross-examination with prior inconsistent testimony. *State v. Garland*, 169 Wn. App. 869, 885, 282 P.3d 1137 (2012). But we presume that decisions regarding the extent of cross-examination are strategic. *See State v. Stockman*, 70 Wn.2d 941, 945, 425 P.2d 898 (1967). "[E]ven a lame cross-examination will seldom, if ever, amount to a Sixth Amendment violation." *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 489, 965 P.2d 593 (1998).

Young's attorney cross-examined both witnesses robustly, and impeached them with other prior inconsistencies. Young may disagree with his counsel's decisions not to use certain prior testimony to impeach the witnesses' credibility, but this does not elevate those decisions to the level of deficient performance. We hold that Young's trial counsel provided effective assistance with regard to cross-examining these witnesses.

b. Appellate Counsel

Young argues that his appellate counsel provided ineffective assistance because he did not raise in the main appeal the "obviously appealable constitutional issues" Young raises in his SAG. SAG at 30. However, "the exercise of independent judgment in deciding which issues

16

45582-0-II

may be the basis of a successful appeal is at the heart of the attorney's role in our legal process." *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 314, 868 P.2d 835 (1994). Therefore, for a defendant to prevail on an ineffective assistance of counsel claim for failure to raise certain issues on appeal, he must show that the issues not raised had merit. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 777-78, 100 P.3d 279 (2004).

As discussed above, the issues Young raises in his SAG either lack merit or are not properly reviewable on direct appeal. Therefore, his appellate attorney's strategic decision not to raise them was neither deficient nor prejudicial performance. We hold that Young's appellate counsel provided effective assistance.

We affirm Young's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
WORSWICK, P.J.

_____
LEE, J.

17