# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| In the Matter of the Personal Restraint of | No. 59990-2-II |
|---|---|
| JONATHAN JOSHUA OSON, | UNPUBLISHED OPINION |
| Petitioner. | |

GLASGOW, J.—Jonathan Oson was convicted of first degree felony murder and unlawful possession of a firearm after a bench trial in Clark County Superior Court. Oson unsuccessfully appealed, and he has filed this timely personal restraint petition. He argues that the trial court violated his right to present a defense by denying his motion for a material witness warrant. He also contends that the trial court deprived him of a fair trial by allowing the State to introduce testimony from a detective comparing tire tracks and tire treads without qualifying the detective as an expert. Finally, Oson asserts the State failed to disclose crucial impeachment evidence, the State improperly vouched for the truth of a witness's testimony, and his counsel was ineffective. We deny Oson's petition.

### FACTS

A.      Background Facts

The trial court found the following facts and Oson has not challenged them, so they are verities for purposes of this proceeding. *State v. Gibson*, 152 Wn. App. 945, 951, 219 P.3d 964 (2009).

In 2018, Oson and Justin Schell were friends. Schell was a convicted felon and prohibited from possessing firearms. Nonetheless, Schell traded drugs for a 12-gauge, chrome-plated shotgun with a pistol grip and the serial number scratched off. Knowing he could not lawfully possess a firearm, Schell asked Oson if Oson could hold the shotgun for him until he could sell it. Oson agreed.

When Schell gave the firearm to Oson, Oson pointed the gun at Schell and asked, "Who can I rob?" Clerk's Papers (CP) at 352. Schell panicked and gave Oson the name and telephone number of Ariel Romano, a man Schell frequently bought drugs from.

Oson and Schell went into a motel room rented by their acquaintance, Raul Flores. From there, Oson arranged to meet Romano later that night. Schell also made plans to meet Romano to buy drugs before Oson got there. Schell told Oson that Romano would be in the Winco parking lot in his Toyota Corolla. Oson drove to Winco with Flores in Flores' Lincoln.

Oson and Flores attempted to rob Romano with the shotgun Schell had given Oson, and Romano fled in his car. Oson and Flores pursued Romano in Flores' car. Flores pulled his car alongside Romano's, and Oson fired a single round from the 12-gauge shotgun that hit Romano in the side of the head. Romano slumped forward and his car veered to the right and hit a tree. Romano died at the scene.

The Washington State Patrol investigated the crash scene and determined that Romano's car did not brake, steer away from the tree, or do anything else to avoid the crash. Evidence near the scene and from eye witnesses revealed that another vehicle was involved. Surveillance footage from multiple locations showed Flores' car following Romano's car at a high rate of speed moments before Romano's death.

An autopsy of Romano's body showed that Romano died from the gunshot wound to his head and not any injuries he may have suffered when his car hit the tree. The shotgun wadding found in the wound was consistent with 12-gauge shotgun ammunition.

Flores' girlfriend made a tip to law enforcement alleging that Flores and Oson were involved in Romano's murder. *State v. Oson*, No. 83439-8-I, slip op. at 5 (Wash. Ct. App. Sept. 12, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/834398.pdf. Law enforcement then learned of a home where Oson sometimes stayed. *Id*. at 5-6. They executed a search warrant at the home where they found a duffle bag and a backpack with paperwork relating to Oson, along with 12-gauge shotgun shells. They also found a 12-gauge pump action, chrome-plated shotgun with a pistol grip. Oson's DNA was on the shotgun.

Later that month, Oson was arrested on unrelated charges. Law enforcement confiscated two cell phones from his personal property. During a search of one of the phones, officers found photographs of a chrome, pistol-grip shotgun.

B.      Procedural History

The State charged Oson with first degree murder and second degree unlawful possession of a firearm. His case proceeded to a bench trial.

Detective Ortner, one of the Washington State Patrol detectives who investigated the crash scene, testified about the investigation. He photographed tire markings around the scene as well as photographs of the tires on Flores' Lincoln. He also took measurements of both. Detective Ortner testified that when he compared the measurements of the Lincoln with the tire measurements he took at the crash scene, "the tread pattern was . . . consistent and it had general characteristics that were the same." Verbatim Rep. of Proc. (VRP) (Jan. 21, 2020) at 345. Oson did not object.

When the State moved to admit photographs of the tires and tire marks Oson objected, arguing that the photos were not relevant and that Detective Ortner was not an expert on tire tread marks. The State responded that Detective Ortner had 20 years of experience with the Washington State Patrol and was certified as a reconstructionist. The State explained that the detective would not be testifying that, "in his expert opinion this is absolutely the car," but the State argued he could testify that the tire marks were consistent with the tire treads. VRP (Jan. 21, 2020) at 348.

The trial court overruled Oson's objection, explaining that lay opinion evidence had already been admitted without objection, which was appropriate. The trial court found the evidence relevant and that the weight to be given to the lay opinion testimony was a matter for the fact finder.

Schell agreed to cooperate with the State by testifying against Oson in return for reduced charges and a stipulated recommendation for an exceptional downward sentence. The State introduced the plea agreement into evidence during its direct examination of Schell. The agreement required Schell to give truthful testimony about the case. Oson did not object to the admission of the plea agreement or to Schell's testimony that he agreed to testify truthfully.

Oson called his friend Kin Kinsory Bossy to testify in his defense. Bossy testified that on the night of June 8, leading up to the murder, he and Oson were both at a birthday party for his cousin. On cross-examination, Bossy testified that he had been convicted of multiple crimes of dishonesty. And the State introduced evidence that Bossy was actually incarcerated on the night of the murder.

Oson also testified in his own defense and argued that he was not present at the murder. The trial court found Oson's testimony not credible "because of his inherent bias; his prior

4

convictions for multiple crimes involving dishonesty, and the many conflicts between his testimony and the other evidence admitted during the trial." CP at 354.

At the conclusion of Oson's testimony, defense counsel informed the trial court that he had served Brian Howe with a subpoena several weeks before trial, requiring him to appear and testify. Oson anticipated that Howe would testify that he was with Oson at a party on the night Romano was shot. Howe did not appear at trial.

Oson did not raise the issue of Howe's failure to appear with the trial court until one week after Howe was supposed to appear. Oson argued that Howe was a material alibi witness and asked the trial court to take a two-week break for him to prepare a material witness warrant and have law enforcement search for Howe to execute the warrant. The State opposed this request, arguing that Oson had not established the materiality of the witness and that the request should have been made one week earlier when Howe had failed to appear.

The trial court denied Oson's request for a material witness warrant. The trial court acknowledged that Howe was likely a material witness, but emphasized the one week delay between the date Howe was subpoenaed to appear and Oson's request for a material witness warrant. The trial court explained that they were nearly at the end of trial, with only the State's rebuttal and closing arguments remaining. The court noted that it could take months to find the witness. The trial court concluded that Oson had failed to act with diligence to timely bring his request for a material witness warrant and denied the request. Oson then rested his case.

The trial court found Oson guilty as charged. Oson appealed, and Division One of this court affirmed Oson's convictions. *Oson*, slip op. at 2.

Oson then filed this timely personal restraint petition arguing that the trial court denied his right to present a defense by denying his motion for a material witness warrant and that the trial court denied him a fair trial by permitting the State to introduce testimony from a detective regarding tire tracks and tire tread without first qualifying the detective as an expert. Oson also argues that the State failed to disclose evidence Bossy was in jail on the night of the murder, the State improperly vouched for the truth of Schell's testimony, and Oson's counsel was ineffective because counsel insufficiently interviewed Oson and failed to provide Oson with copies of discovery before trial.

## ANALYSIS

Collateral relief through a personal restraint petition is limited. *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010). "A personal restraint petitioner must prove either a (1) constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that 'constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (internal quotation marks omitted) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)). The petitioner must prove the necessary prejudice by a preponderance of the evidence. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).

### I. MATERIAL WITNESS WARRANT

Oson argues that the trial court denied his right to present a defense by denying his motion for a material witness warrant. We disagree.

Both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to present testimony in one's

defense and the right to compulsory process to compel the attendance of witnesses. *State v. Hudlow*, 99 Wn.2d 1, 14, 659 P.2d 514 (1983); *State v. Maupin*, 128 Wn.2d 918, 924, 913 P.2d 808 (1996). "'The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense.'" *Maupin*, 128 Wn.2d at 924 (quoting *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967)).

However, neither the right to compulsory process nor the right to present a defense is absolute. *State v. Thomas*, 150 Wn.2d 821, 857, 83 P.3d 970 (2004). The availability of the right to compulsory process is wholly dependent on the defendant's initiative. *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). The defendant bears the burden of establishing the materiality, relevance, and admissibility of the proposed testimony. *State v. Roberts*, 80 Wn. App. 342, 351, 908 P.2d 892 (1996).

In order for the right to compulsory process to be violated, the State's conduct must "impermissibly interfere with the right to mount a defense." *State v. McCabe*, 161 Wn. App. 781, 787, 251 P.3d 264 (2011). The contested act or omission must be attributable to the State, and it must cause the loss or erosion of material testimony that is favorable to the accused. *Id*. The right is not violated where "the obstacle to a defendant's getting what he perceives as the full benefit of his Sixth Amendment right is not government interference, but an uncooperative witness." *Id*. Whether denial of the request to issue a material witness warrant rises to the level of a constitutional violation, requires a case-by-case inquiry. *State v. Downing*, 151 Wn.2d 265, 275, 87 P.3d 1169 (2004).

We review a trial court's decision to deny a motion for issuance of a material witness warrant for a manifest abuse of discretion. *City of Bellevue v. Vigil*, 66 Wn. App. 891, 895, 833

P.2d 445 (1992). In exercising its discretion to grant or deny a request for compulsory process, the trial court may consider a number of factors, including surprise, diligence, materiality, and maintenance of orderly procedure. *State v. Edwards*, 68 Wn.2d 246, 255, 412 P.2d 747 (1966).

Here, Oson failed to make a request for a material witness warrant until nearly the end of trial and one whole week after Howe failed to appear.[1] Oson's request to the trial court was for a two-week pause in the trial proceedings. Where Oson's counsel anticipated that issuing a material witness warrant would have necessitated a lengthy delay in trial, and the obstacle the defense faced was an uncooperative witness as opposed to interference from the State, we hold that the trial court did not abuse its discretion by denying Oson's last-minute request for a material witness warrant.

Moreover, even if there were a constitutional error here, Oson has not established actual and substantial prejudice. On collateral review, it is the petitioner's burden to establish prejudice, and where a petitioner relies on the knowledge of others, the petitioner must present a declaration or other corroborative evidence, rather than merely speculating about what that person might say. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Here Oson offers no more than speculation as to what Howe would have testified to had he appeared at trial. This is not enough to show actual and substantial prejudice. *Id*. And as Division One explained on direct appeal, "the evidence of Oson's guilt include[ed] witness testimony, Facebook messages, text messages, cell tower location data, jail calls, surveillance videos, and corroborating physical evidence." *Oson*, slip op. at 19. Division One also concluded that this evidence was overwhelming.

---

[1] Oson rested his case after the trial court denied his request for a material witness warrant, leaving only rebuttal testimony and closing arguments.

*Id.* Thus, no actual and substantial prejudice arose from the trial court's denial of the material witness warrant.

## II. TIRE TESTIMONY

Oson also argues that the trial court abused its discretion by allowing the State to introduce testimony from Detective Ortner regarding the comparison of tire tracks to tire treads without establishing him as a qualified expert. We disagree.

"The admission of evidence lies largely within the sound discretion of the trial court." *State v. Halstien*, 122 Wn.2d 109, 126, 857 P.2d 270 (1993). We will not disturb a trial court's determination to allow certain evidence absent a manifest abuse of discretion. *Id*. A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001).

Contrary to Oson's characterization of Detective Otner's testimony, the State did not elicit expert opinion testimony on the tire treads and tire tracks. During argument on Oson's objection to the photographs, the State clarified that it was not asking Detective Otner to say, in an expert opinion, whether that tire necessarily made that mark. Rather, Detective Otner simply testified that the marks were generally consistent. And the trial court, in making its evidentiary ruling, acknowledged this nuance. The trial court explained that Detective Otner's testimony amounted to lay opinion testimony about whether the tire marks and treads appeared consistent.

A lay witness's opinions or inferences must be limited to those that are rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. ER 701. And the testimony cannot be based on scientific, technical, or otherwise specialized knowledge. *Id.* That standard is met here. Detective Otner testified as to

his perception of the tire marks, which is helpful to understanding how law enforcement moved forward with the investigation of the crash scene. This testimony is similar to lay opinion testimony regarding speed of a vehicle, which courts have upheld. *See State v. Farr-Lenzini*, 93 Wn. App. 453, 462, 970 P.2d 313 (1999). And here, the proceeding was a bench trial, where the trial court understood the difference between lay and expert testimony, and there was no risk of confusing the factfinder. Under these circumstances, we hold that the trial court's evidentiary ruling was not a manifest abuse of discretion and therefore Oson fails to establish a nonconstitutional error that constitutes a fundamental defect and that inherently results in a complete miscarriage of justice.

### III. BOSSY INCARCERATION EVIDENCE

In his initial petition, Oson also argues that he was deprived a fair trial because prior to trial, the State improperly withheld evidence that Bossy was incarcerated on the date of the homicide, and therefore Bossy could not have been at a birthday party with Oson.

Due process requires the State to disclose evidence that is both favorable to the defendant and material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). To constitute a *Brady* violation, the evidence must be material or impeaching, the State must have suppressed the evidence, and "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 282, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). To demonstrate prejudice, the key question "'is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence [they] received a fair trial . . . resulting in a verdict worthy of confidence.'" *Id*. at 289-90 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)).

Oson fails to establish that evidence of Kin Bossy's incarceration at the time of the murder was withheld from him. Oson's defense counsel interviewed Bossy before trial, and Oson did not object when the State introduced evidence of Bossy's incarceration. Moreover, even if we assume the evidence was not provided to Oson, Oson cannot show any ensuing prejudice. The trial court found Bossy's testimony not credible, but it did not expressly reference his incarceration as the basis for its finding. The trial court found Bossy not credible "because of his friendship with the defendant; comments he made on his Facebook page prior to his testimony; his prior convictions for crimes involving dishonesty, and many conflicts between his testimony and the other evidence admitted during the trial." CP at 354. And as Division One concluded on direct appeal, Bossy's testimony that failed to support Oson's alibi was not a factor that would likely have altered the outcome. *Oson*, slip op. at 19. Thus, Oson has failed to show actual and substantial prejudice arising from a constitutional error.

## IV. VOUCHING

Oson also argues in his initial petition that the State committed prosecutorial misconduct by vouching for Schell's credibility by introducing the plea agreement in which Schell agreed to testify truthfully.

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). "If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id* at 760-61. First, we determine whether the prosecutor's conduct was improper. *Id*. at 759. If the prosecutor's conduct was improper, the

question turns to whether the prosecutor's improper conduct resulted in prejudice. *Id*. at 760-61. Prejudice is established by showing a substantial likelihood that the prosecutor's misconduct affected the verdict. *Id*. at 760.

A prosecutor commits misconduct by personally vouching for a witness's credibility or veracity. *State v. Ish*, 170 Wn.2d 189, 196, 241 P.3d 389 (2010). "Improper vouching generally occurs (1) if the prosecutor expresses his or her personal belief as to the veracity of the witness or (2) if the prosecutor indicates that evidence not presented at trial supports the witness's testimony." *Id*.

In *Ish*, the trial court admitted evidence of a plea agreement between the State and Ish's cellmate, and allowed the State to question the cellmate about the agreement. Under the plea agreement, the cellmate "agree[d] to provide 'a complete and *truthful* statement,' to 'testify truthfully,' and to 'have told the *truth*, to the best of his knowledge.'" *Id*. at 193. On direct and redirect examination, the prosecutor's questions established that the plea agreement required "'[t]ruthful testimony'" and the prosecutor elicited testimony from the cellmate that he agreed to testify truthfully. *Id*. at 194 (quoting record).

The *Ish* court held that admitting the plea agreement and the prosecutor's subsequent questioning on direct examination constituted vouching by the prosecutor. *Id*. at 199. Such testimony may indicate to the jury that the State had some independent means of ensuring the witness complies with the terms of the agreement, bolstering the witness's testimony. *Id.* at 198. The *Ish* court also explained that, where the defense has opened the door by attacking the witness's credibility, the State is entitled to point out the existence of a promise to testify truthfully. *Id*. at 198-99.

Here, the State questioned Schell on direct examination about his obligation under the plea agreement to tell the truth. The State concedes that under *Ish*, this constitutes vouching by the prosecution. But because Oson did not object to the testimony at trial, he waived any such error unless he can show that the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured any resulting prejudice. *Emery*, 174 Wn.2d at 760-61. In making that determination, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762.

Had Oson objected at trial, the trial court easily could have stricken the testimony and allowed it to be introduced only after Oson challenged Schell's credibility on the basis of the plea agreement during cross-examination. This error could have been cured had Oson objected, and therefore he waived the issue for review and his prosecutorial misconduct claim fails.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Oson also argues that he received ineffective assistance of counsel because his defense counsel insufficiently interviewed him and failed to provide Oson discovery before trial.

Article I, section 22 of the Washington State Constitution and the Sixth Amendment to the United States Constitution both guarantee effective assistance of trial counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on a claim of ineffective assistance, Oson must show that his trial counsel's "' representation fell below an objective standard of reasonableness'" and that counsel's "'deficient performance prejudiced'" Oson. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). *Strickland* requires "the defendant to overcome 'a strong presumption that the counsel [was] effective.'" *Id.* at 123 (alteration in original) (quoting *State v.*

*Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021)). A failure to establish either prong will end our inquiry. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). "We apply the same prejudice standard to ineffective assistance claims brought in a personal restraint petition as we do on appeal." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017).

Appellate courts apply "exceptional deference" when "evaluating counsel's strategic decisions," and "[i]f trial counsel's conduct can be characterized as legitimate trial strategy or tactics," it will not support a claim of ineffective assistance. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). "To rebut the presumption of reasonableness, a defendant must establish an absence of any legitimate trial tactic that would explain counsel's performance." *Lui*, 188 Wn.2d at 539. The petitioner must prove that "counsel's performance fell below an objective standard of reasonableness in light of all the circumstances." *Id.* at 538.

It is clear from the record that defense counsel did meet with Oson to discuss the trial; Oson provided potential witness names to counsel. And Oson does not identify what discovery his counsel failed to provide or discuss with him. Without more, Oson has not shown that defense counsel's performance fell below an objective standard of reasonableness, nor has he shown a constitutional error resulting in actual and substantial prejudice.

## CONCLUSION

We deny Oson's petition.

No. 59990-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, P.J.

LEE, J.